## THE STATE *v.* JAMES SHIRLEY.

In a case where there was some evidence tending to show that a person who interferred to prevent the prisoner from shooting another, had been killed *accidentally*, the Judge who presided at the trial instructed the jury, "If one is about to do an unlawful act, and a third party interferes to prevent it and is killed, it is *murder:* *Held*, that as this proposition included cases of *accidental* homicide, it was erroneous.

(*State* v. *Benton*, 2 D. & B. 196 ; and *State* v. *Hoover*, 4 *Ib.* 268, approved.)

MURDER, tried before *Jones, J.,* at Spring Term 1870, of EDGECOMBE Court.

The prisoner was charged with shooting his wife, at their home, which was also the home of a son-in-law of theirs. It appeared that the prisoner and the deceased were sitting outside of the door, and the son-in-law and his wife, inside, by the fire. A child of the son-in-law had a fall, and cried, and the prisoner became vexed at, what he thought, the negligence of the child's parents. He continued to grow more angry, and after awhile, cursed and threatened the son-in-law. The latter then went out of doors, and offered to *take off his coat, and let the prisoner whip him.* Thereupon the prisoner ran into the house, got a stick, started out, and reached the edge of the door, when the deceased shoved him back into the house. The deceased and others. who were present shut the door; and the deceased went into the house. The prisoner then threw the stick down, and took his gun, telling the deceased that if she did not let him go out, he would shoot her. The deceased spoke to the son-in-law, through the cracks between the logs, telling him "to go away and not have any words with him." The gun thereupon went off, and the deceased fell dead.

One of the witnesses testified that a daughter of the deceased cried out upon this, "You have killed mother," and

the prisoner replied, "You are a damned liar! I have just knocked the bark off of her throat." Another witness said she did not see the prisoner fire, but did see him take the gun from his shoulder, and said, "Lor! Mary is dead!" and ran out.

Doctor Williams testified, that he was called to the deceased, and examined the wound; that it was a gun shot wound in the left side of the cheek, carrying away the jaw, and penetrating and lodging in the lobe of the brain; that a portion of the neck was included, the wound being equidistant between the chin and the ear; that the wound indicated that at the discharge of the gun, its breech was lower than its muzzle; that the deceased was a woman of ordinary size, and that the lower lobe of the brain is about two inches above the burr of the ear.

In commenting upon the remarks that had been made upon the trial by the prisoner's counsel: to the effect that the gun might have been discharged otherwise than as stated, since the shot coursed upwards,—his Honor said, That the direction that shot would take, at all times was difficult to account for,—it depended upon the substance and the structure they first encountered,—that if they encountered a bone, it depended upon the angle at which the discharge took place, whether they would course up or down.

He also charged the jury, that if one is about to an unlawful act, and a third party interferes to prevent it and is killed, it is murder.

Verdict, *Guilty;* Rule, &c.; Judgment, and Appeal by the prisoner.

*Howard,* for the appellant.
*Attorney-General, contra.*

PEARSON, C. J. If the prisoner discharged the gun on

purpose, it is murder; if it went off accidentally, as if by a jerk or a sudden motion in a scuffle with the deceased, who had interfered to prevent him from going out of the house, or pushed him back to prevent his shooting Harris, it is not murder. The offence cannot be murder unless there was an intent to kill, although the killing without an intent to do so, would not be homicide by misadventure, and excusable, but would amount to manslaughter, because of the prisoner's violence and want of care.

There is error in the instruction, "If one is about to do an unlawful act, and a third party interferes to prevent it, and is killed, it is murder." *State* v. *Benton,* 2 D. &. B. 196, is relied upon to sustain the instruction. In that case the intention to kill was manifest. There the Court use this strong language : "The prisoner turned from the first victim of his contemplated vengeance, advanced, and, without a word of warning, plunged a knife into him, and killed him : it is murder." The ruling in this case is thus stated in Battle's Digest 687 : "If one man assails another, and is about to commit an unauthorized act of violence upon him, and a third person interferes to prevent it, and is killed by the assailant, it is murder." This is accurate in respect to the facts of that case, and the error of his Honor is, in laying it down as a general principle, applicable to a case where the facts may be different in regard to the very gist of the matter—to-wit, an intentional killing. An intent to kill or do great bodily harm, is necessarily involved in the idea of murder : *State* v. *Hoover,* 4 D. & B. 268 ; Foster 219.

So the question is, Was there any evidence to raise the point, that the prisoner did not discharge the gun on purpose? The testimony of Dr. Williams furnishes "natural evidence" tending to show that the gun was not discharged in the usual way—the range of the shot coursing upwards from the lower jaw-bone, and lodging in the lobe of the brain,

two inches above the burr of the ear, the parties standing on the floor. Taking this to be the fact, it was for the jury to say how far it contradicted the evidence on the part of the State, and whether it did not lead to the conclusion, that the parties were in a scuffle, the breech of the gun lower than the muzzle, and that it went off by accident. In this connection the remarks of his Honor as to the effect of shot encountering a hard substance, would have been pertinent, not as being *his opinion*, for none but experts are allowed to express opinions in matters of scientific speculation, but as a subject to be considered by the jury in coming to a conclusion in respect to the facts of the case, in connection with the evidence as to the deceased having pushed the prisoner back from the crack, while he had the gun in his hands, his exclamation "Lor! Mary is dead!" and all of the other testimony and circumstances of the case.

A decision of the case as now presented, does not call for further comment. On a second trial the facts may be more fully developed. Should the case come to the Court again, the facts and the rulings of his Honor should be more satisfactorily set out.

PER CURIAM.                    *Venire de novo.*