### STATE v. JAMES VINES.

*Homicide—Manslaughter—Reckless Use of Dangerous Weapons—Accident—Evidence—Opinion.*

1. Where one engaged in an unlawful and dangerous sport kills another by accident, it is manslaughter.

2. If the sport were lawful and not dangerous, it would be homicide by misadventure.

3. The test of responsibility depends upon whether the conduct of the accused was unlawful, or, not being so, was so grossly careless or violent, as necessarily to imply moral turpitude.

4. The opinion of an eye witness, as to whether the fatal blow was accidental or not, is not competent. That is a fact for the jury to determine upon the consideration of all the circumstances connected with the homicide.

5. A charge to the jury that if they believed the witness—there being but one witness, and no conflict in, and no alternative aspect, of his testimony—the prisoner was guilty of manslaughter, was not erroneous.

(*State* v. *Dixon*, 75 N. C., 275, cited and distinguished; *State* v. *Walker*, N. C. T. R., (230) 662; *State* v. *Hildreth*, 9 Ired., 429; *State* v. *Ellick*, 2 Winston, 56; *State* v. *Baker*, 63 N. C., 276; *State* v. *Elwood*, 73 N. C., 189; *State* v. *Buck*, 82 N. C., 551; *State* v. *Shirley*, 64 N. C., 610; *State* v. *Roan*, 2 Dev., 58, cited and approved).

The prisoner was tried for the murder of one Samuel Joyner, at Spring Term, 1885, of GREENE Superior Court before *Gudger*, *Judge*.

There was a verdict against the prisoner for manslaughter, and judgment being pronounced thereon, he appealed.

The part of the case settled upon appeal necessary to a proper understanding of the opinion of the Court, is as follows:

" The only evidence adduced on the trial, was the testimony of one Freeman Streeter, sworn and introduced as a State's witness. He testified that he, with several other men, was at the prisoner's house on the night of the homicide, and saw the killing of Joyner, the deceased; that it was done by a pistol shot fired by the prisoner; that the deceased lived but a few seconds after the firing.

"That they were expecting to have a 'festival' at the prisoner's house that night, at which the prisoner was to furnish the refreshments, and the witness was one of the invited guests. Witness did not know of any ill feeling ('madness,' as he expressed it) among any of the parties present. That some girls were expected, but it was raining and they did not come. That the killing of the deceased was about one or two o'clock at night; the weapon which caused his death being a thirty-two calibre pistol with several barrels. That he (witness) saw the prisoner load every barrel of the pistol on the night of the homicide, and before the deceased was shot. That one John Hines, who was present, also had a pistol. That the prisoner, soon after loading his pistol, discharged one barrel of it, shooting out of the door, and that John Hines also fired his out of doors. The deceased had no pistol. John Hines and James Vines (the prisoner) got to 'fooling' with sticks. Then they put their sticks down, and John Hines caught up his pistol from the chimney piece, and told prisoner that if he fooled with him, he would blow his brains out. Prisoner then got his pistol from a shelf and told John Hines if he could smoke more than he (prisoner) could, to smoke away. Witness said 'Jim, you and John put down your pistols and quit fooling with them, you might shoot some person.'

"Prisoner said he was not going to shoot any one.

"At this time the deceased was sitting on a bed in the prisoner's house. Then, while both Hines and Vines, (the prisoner), were standing face to face pointing their pistols at each other, Hines fell down behind the deceased on the bed and said to the prisoner, "shoot and be damned," and then the prisoner's pistol fired. The shot struck Joyner, the deceased. John Hines then ran into the back room, and the deceased "made for" the back door and commenced to stagger, and fell against the house. The prisoner, who was at that time standing in the floor, caught the deceased and held him up, then turned him loose and the deceased fell to the floor.

"Cross-examined: the witness testified that he and the deceased were invited to the prisoner's house on the night of the homicide.

"That he saw no liquor there. That as the deceased fell, the prisoner said, "Boys, I have shot him, but it was accident." Prisoner's counsel offered to ask the witness if he regarded the shooting as accidental? Objected to by the Solicitor for the State; objection sustained, and prisoner excepted."

The Solicitor for the State, in his address to the jury, while expressing his belief that in strict law the offence was murder, claimed only a verdict for manslaughter.

His Honor instructed the jury that if they "believed the testimony of the witness, the prisoner was guilty of manslaughter."

The *Attorney General*, for the State.

*Mr. Hugh F. Murray*, for the prisoner.

MERRIMON, J., (after stating the facts). The Court instructed the jury, that if they should believe the evidence, the prisoner was guilty of manslaughter. They rendered a verdict of guilty of that offence, and it must be taken that they believed the evidence; and, if they did, it is manifest that the prisoner was at least guilty of manslaughter. If it be granted that he and Hines were in jest and rough sport—and this is by no means certain—he was using a dangerous weapon—a loaded pistol, knowing that it was loaded—not only incautiously, but in a most reckless and unlawful manner. He had it pointed at Hines, who fell behind the deceased, saying as he did so, " shoot and be damned," when at once he fired the fatal shot. If he did not intend to kill Hines, and the discharge of the pistol was unintentional, still the killing was manslaughter, because in any view of his conduct, he used the dangerous weapon carelessly, recklessly and unlawfully. It is clear, that where one engaged in an unlawful or dangerous sport, kills another by accident it is manslaughter. Arch. Cr. Pl., 397 ; Fost. Cr. Law, 259, 260, 261; 1 Hale Pl. Cr., 472, 473; Ros. Cr. Ev., 687, 688; *State* v. *Shirley*, 64 N. C., 610 ; *State* v. *Roan*, 2 Dev., 58. This, however, would not be so, if the sport were lawful and not danger-

ous—in such case it would be no more than homicide by misadventure. There is a variety of cases in which a person, causing the death of another, without intending to inflict injury, is criminally responsible, though not under the circumstances, chargeable with murder. In such cases, the test of responsibility depends upon whether the conduct of the party accused, was unlawful, or, not being so, was so grossly negligent, reckless or violent, as necessarily to imply moral impropriety or turpitude. In some cases it may be difficult to determine the grade of the offence, but the case before us leaves no ground for doubt or hesitation in determining that it is at least one of manslaughter; indeed, in one aspect of the case, it was murder. There was some evidence going to show the wilful purpose of the prisoner to shoot without regard to the consequences, and if this purpose existed, it was murder.

The prisoner's counsel proposed to ask the witness, "if he regarded the *shooting as accidental?*" Upon objection, the Court would not allow the question to be put, and this is made a ground of exception.

The question was properly excluded, because, first, the opinion of the witness was not competent evidence, and secondly, it was immaterial.

Generally, the Court or the jury, as the case may be, as the triers of questions and issues involving the ascertainment of facts, reach their conclusions from the facts in evidence before them, and not from the opinions of witnesses. There are well defined exceptions to this general rule, but these do not affect this case, and need not be stated here. If, in some possible cases, the opinion of a non-expert may be competent evidence, as ingeniously contended by the counsel for the prisoner in his very interesting brief, this is clearly not one of them. The facts of the case were plain, clear and distinct, and the witness by a simple recital of them, put the Court and jury in full possession of them and the circumstances attending the homicide, and they were as competent to judge whether or not the shooting was accidental as the witness. There is nothing in the case that warrants a depar-

ture from the general rule of law that excludes such evidence.

If the facts testified to, were not stated with sufficient fullness of detail, the prisoner might have elicited them by a proper cross-examination of the witness, in which case, the jury could have drawn proper inferences from them without the opinion of the witness. There was no necessity for the opinion of the witness in order to give the jury facts they could not get otherwise than by his opinion.

The opinion of the witness was also immaterial. If he had been allowed to say that in his opinion the shooting was accidental, this could not have materially changed the case, because, the prisoner had used the loaded pistol in an unlawful and reckless manner, and whether the firing was accidental or not, made no difference. The law does not tolerate such use of dangerous weapons, and when fatal consequences result from it, the offender cannot be held guiltless; in such case he must answer for the consequences. It would be monstrous and shocking to reason to allow a man to so use a loaded pistol, and then take shelter behind the fact that the firing was accidental!

It was insisted on the argument here, that the Judge invaded the province of the jury in instructing them that, "if they believed the testimony of the witness, the prisoner was guilty of manslaughter." We do not think so; this contention has not the slightest foundation.

The Judge did not intimate in the least degree in terms or by implication, that he did or did not believe the evidence to be true, nor did he tell the jury that they should believe it, or any part of it; he, in effect, told them that in any possible view of the evidence (and taking it most favorably for the prisoner), if they believed it to be true, then as a conclusion of law, he was guilty of manslaughter. This was unobjectionable in this case.

There was but one witness—there was no conflict of testimony—there were no alternative aspects of it to be submitted. The credit of the witness and the sufficiency of his testimony to produce conviction upon their minds, was broadly and without quali-

fication left to the jury. *State* v. *Walker*, N. C. T. R. (230), 662; *State* v. *Hildreth*, 9 Ired., 429; *State* v. *Ellick*, 2 Winst., 56; *State* v. *Baker*, 63 N. C., 276; *State* v. *Elwood*, 73 N. C., 189; *State* v. *Buck*, 82 N. C., 551.

The case of *State* v. *Dixon*, 75 N. C., 275, relied upon by the counsel, is not like this. There the Judge *directed* the jury to return a verdict of manslaughter. This was obviously erroneous—the jury were not allowed to pass upon the weight and sufficiency of the evidence, nor to say whether or not they believed it.

In our judgment, the prisoner has not the slightest ground of complaint at the verdict of the jury, or the action of the Court. Indeed, it is fortunate for him that he was not convicted of a more serious offence.

There is no error. To the end that judgment be rendered and further proceedings may be had in the action, let this opinion be certified to the Superior Court according to law.

No error.                                          Affirmed.