STATE *v.* JAMES BOOKER.

(Decided October 25, 1898.)

*Indictment for Murder—Presumption at Common Law from Killing with a Deadly Weapon—Presumption Since the Act of 1893—Special Instructions.*

1. The trial judge is not required to give special instructions in the precise words asked, even when unobjectionable. A substantial compliance is sufficient. Attention called to a misprint in *Norton* v. *Railroad,* 122 N. C., page 934, line 13 where "objectionable" should have been printed "unobjectionable."

2. Killing with a deadly weapon implies malice. At common law the prisoner guilty of it was presumed to be guilty of murder until the contrary appeared. Since the Act of 1893 this presumption extends only to murder in the second degree. In *State* v. *Finley,* 118 N. C., 1161, the 8th syllabus is incorrect and differs from the opinion, in asserting the presumption of murder in the first degree.

INDICTMENT for murder tried before *Timberlake, J.,* at March Term, 1898, of WAKE Superior Court.

The prisoner was convicted of murder in the first degree of Mahaley White upon the following bill of indictment:

NORTH CAROLINA,     Superior Court,

WAKE COUNTY.     January Term, 1898.

The jurors for the State upon their oaths do present that Jim Booker, *alias* Jim Chavis, late of the County of Wake, with force and arms at and in the said county on the 29th day of August in the year of our Lord One Thousand Eight Hundred and Ninety-Six, wilfully, feloniously, and of his malice aforethought did kill and murder Mahaley White, contrary to the form of the

statute in such cases made and provided, and against the peace and dignity of the State.

POU, *Solicitor.*

### STATEMENT.

Indictment for murder tried before *Timberlake, J.* The indictment charges the prisoner with the murder of Mahaley White.

Penny White testified for the State: Deceased was my daughter; she died year before last. Her head was shot off. The prisoner came to my house that morning after pepper, and after he went off the deceased was sitting on the steps. In about an hour the prisoner came back. I heard deceased hallo. She said "My Lord, have mercy, look here," and fell over on her side. Prisoner shot her in the head. He had a gun in his hand pointed at her and shot off the back of her head. I have known him five years. He got black pepper and went off, but came back again. The deceased came from the garden and sat down on the door step. There was a barrel near by. When prisoner came first, he had no gun. About 10 o'clock he came back again, and I heard deceased say "My Lord, look here," and I looked and the prisoner came around with a gun, shot her, and she fell behind the barrel on her side; the gun was about 3 feet from her when he shot; load went in the back of her head; she never spoke a word after that. (Witness shows part of a dress said to have been worn by deceased at the time of the shooting. The puff on one of the sleeves shows a hole, and red stains appear upon the lining of the garment). Deceased had on this when she was shot. Prisoner said nothing after he shot her, but went back to Crabtree. Robert and Richard Blake came to me first; I told them Jim Booker

shot her. I was in hearing distance and heard my daughter say nothing to provoke the difficulty. There was no fight as I saw, and I could have seen it if there had been one. I could have heard, too, if there had been any quarreling. On cross-examination: I was not as far away as it is from where I am sitting to the court house door. Deceased didn't go into the house from the time she got him the pepper until she was killed and carried in. I did not tell Mr. Walters that I had to scuffle with prisoner before he shot my daughter. When prisoner came back the second time he did not talk with deceased. She was behind a barrel, squatting, and he shot her behind the barrel. He did not shoot her with my gun. He carried the gun off with him.

Robert White testified for the State: I am fourteen years old; deceased was my mother, and was killed when I got there. I had been hunting with a single-barrel gun; we had two guns, and the double-barrel gun was there where I left it, and when I came back both barrels were loaded. My mother was behind the barrel dead when I came home. Grandmother told me Jim Booker had come there and killed my mother. She said nothing about a fuss between them. On cross-examination: No scuffling there—no evidence of any there. I know our gun was loaded because I shot both loads out the next week.

Robert Blake testified for State: I heard report of gun that morning and some one screaming. I started towards home, and as I came to the corner of the fence I saw Robert White coming up the hill, asked him what was the matter, and he said the prisoner had shot his mother. I went on and saw the old lady, who said Jim Booker had killed her. I saw the deceased resting on

her side with her head shot off. I looked at the gun in the house and found that it had not been shot. I saw nothing of prisoner. Old lady said he went off towards Crabtree.

C. M. Walters, deputy Sheriff, testified for State: Went to this house at 11 in the morning; found some people there; found deceased behind the barrel; back of her head was turned over on her face and brains scattered and pieces of skull blown about. Old lady Penny said the deceased was sitting on the door step (as she stated on her examination) and that Booker shot her as she started up. She said the deceased started to run. Deceased was near the house and behind the barrel. I saw no signs of scuffling, and there was no suggestion that any fight had taken place. Old lady said, as prisoner and deceased went off that morning before the shooting that they were quarreling. Prisoner could have gotten through the house from behind and shot deceased without being seen by the old lady. There were two ways by which he could have got there without being seen.

Prisoner's evidence: Blake recalled and testified "I found no shot about deceased."

R. M. Haughton testified: Found the deceased 7 or 8 feet from the barrel—did not measure the distance.

Old lady Penny said she saw prisoner with a gun and ran to meet him and caught the gun and said to him, "Jim, you are not going to shoot my child," and that prisoner threw her away from him and shot her daughter. Walters and others were present. On cross-examination: She said the first she knew, prisoner was going out of the house with the gun.

Re-direct by the State. Walters, recalled: I was there with Haughton, and did not hear anything about a fuss or scuffling, that he testified about.

Pearce, testified: "I was there with Haughton and did not hear Penny say what Haughton testified about."

The foregoing is all the evidence introduced on the trial. The prisoner in apt time requested the Court to charge the jury as follows:

1. That malice must be shown by the State before prisoner can be convicted of murder in the first degree. Refused, except as covered by general charge. Prisoner excepted.

2. That to convict prisoner of murder in the first degree, the same degree of deliberation and premeditation must have been used by the prisoner as would have been used by him if he had killed deceased with poison. Refused, except as covered by general charge. Exception.

3. That to convict of murder in the first degree the prisoner must have used the same degree of deliberation and premeditation as would have been used if he had killed deceased with starvation. Refused as above and prisoner excepted.

4. To convict of murder in the first degree the same degree of premeditation and deliberation must have been used by prisoner as he would have used if he had killed deceased with imprisonment. Refused as above and prisoner excepted.

5. That before prisoner can be convicted of murder in the first degree the jury must be satisfied beyond a reasonable doubt that he used the same degree of deliberation and premeditation as he would have used if he had killed deceased by torture, starvation, poison or imprisonment. Refused as above and prisoner excepted.

6. That if jury believe that killing resulted from a fight between prisoner and deceased, which occurred immediately before the death of deceased, the prisoner

is not guilty of murder in the first degree.   Refused as above and exception by prisoner.

7. That if jury should not be satisfied beyond a reasonable doubt that the death did not result from a fight, which occurred shortly before the killing, between prisoner and deceased, they should not find prisoner guilty of murder in the first degree.   Refused as above and prisoner excepted.

8. That if they should find that the death occurred from a fight which was entered into by prisoner, deceased and her mother, shortly before the killing, he is not guilty of murder in the first degree   Refused as above and prisoner excepted.

9. That unless they shall be satisfied beyond a reasonable doubt that the death did not occur in consequence of a fight which took place between the prisoner, deceased and another shortly before the death of deceased, he is not guilty of murder in the first degree.   Refused as above and prisoner excepted.

10. That if jury should believe that the killing was the result of a quarrel that had, immediately prior thereto, occurred between deceased and prisoner, the prisoner is not guilty of murder in the first degree. Refused as above, and prisoner excepted.

11. That unless they are satisfied beyond a reasonable doubt that the killing did not result from a quarrel between prisoner and deceased, which quarreling occurred immediately before the killing, the prisoner is not guilty of murder in the first degree.   Refused as above and exception by prisoner.

12. That to constitute murder in the first degree all the elements must be united to constitute that offence. Refused as above and exception by prisoner.

13. That before the jury can convict of murder in the

first degree they must be satisfied beyond a reasonable doubt of the truth of each fact which constitutes the crime.   Refused as above and exception by prisoner.

14. That prisoner is not guilty of murder in the first degree if the jury shall believe there was a quarrel between him and deceased some minutes before the killing, unless they shall be satisfied beyond a reasonable doubt that he used the same kind of degree of premeditation or deliberation as would be used in killing by poison, lying in wait, starvation, torture or imprisonment. Refused as above and prisoner excepted.

15. That they must be satisfied beyond a reasonable doubt that prisoner used the same degree of premeditation or deliberation in killing the deceased, no matter what length of time elapsed after a quarrel or fight between them, as would be necessary to kill by poison, lying in wait, starvation, torture or imprisonment. Refused as above, prisoner excepted.

16. That in weighing the testimony of the mother of deceased it is the duty of the jury to consider the fact that she is the mother.   Refused as above, prisoner excepted.

17. That the same weight is not to be allowed to the testimony of a witness who has made contradictory statements about material matters, and, unless such witness is supported by testimony of a convincing nature, the jury should not convict of murder in the first degree.   Refused as above, prisoner excepted.

18. That in considering the flight of prisoner, the jury should take into consideration the fact that prisoner is a colored man of but little intelligence.   Refused, as above, prisoner excepted.

19. There is no presumption of malice from the fact that the deceased was killed.   It is the duty of the

State to satisfy the jury beyond a reasonable doubt that malice existed from prisoner towards deceased, at the time of the killing. Refused as above, prisoner excepted.

20. That the kind or degree of malice that prisoner had towards deceased at the time of the killing must have been such as a person has towards another whom he kills by way of poison, lying in wait, imprisonment, starving or torture. Refused as above, prisoner excepted.

21. That the jury must be fully satisfied or satisfied beyond a reasonable doubt that prisoner had such malice (as indicated in above prayer No. 20) before they can convict the prisoner of murder in first degree. Refused as above, prisoner excepted.

Charge of the Court:—Prisoner is charged in the indictment with murder in the first degree. Under the bill however the jury may find a verdict for murder in first degree or second degree, manslaughter, excusable homicide, which would be not guilty, according as the jury may find the facts to be from the evidence. I say, according as they may find the facts from the evidence, and I want to emphasize this expression, for juries have no right when certain facts are established to find a verdict for a degree of homicide different from that which the law says must follow such a finding of facts. To illustrate: Suppose the evidence establishes the fact that prisoner slew deceased through necessity in order to save his own life or prevent great bodily harm to himself, the law says this will be excusable homicide and your verdict must be not guilty. Again, suppose the evidence establishes the fact that the killing, though unlawful and felonious, was without malice, either expressed or implied, the law says this would be felonious

slaying and your verdict must be manslaughter. Suppose again, the evidence establishes the fact that the killing was unlawful, felonious and with malice, but without premeditation, or deliberation, the law says this is murder in the second degree and so your verdict must be. Again, suppose the evidence establishes the fact that the killing was unlawful, felonious and with malice, also that it was with premeditation, the law says this is murder in the first degree, and so your verdict must be.

I know there is a common idea among the people that in criminal cases the jury is the judge both of the law and fact, and can render just such a verdict as it may see fit, regardless of how the facts may be found, but I tell you, you have no such right under your oaths; your province is exclusively to find facts and your oaths require that you should apply the law as given you by the Court to these facts, and render a verdict in accordance therewith. Your own common sense and reason tell you it must be done. If you are to be the judges of both the law and fact, why require the Court to instruct you at all? It would be idle to do so. Again, if you follow the Court and the Court makes a mistake, there is the Supreme Court to correct it. If you refuse to do this and follow your own ideas of law, and mistake the law, there is no power to correct it. I said I need not cite authority to sustain these positions, but to impress what I have said I will quote what the Supreme Court has said in *State* v. *Covington*, 117 N. C., "That the statute does not give juries the discretion when rendering their verdict to determine of what degree of murder a prisoner is guilty. They must find a verdict according to the evidence, and believing a prisoner guilty be-

123—46

yond a reasonable doubt in the first degree it is their duty to so find, however much inclined to show mercy by rendering a verdict for the lesser offence." And I will also add, as I have already said, believing the prisoner guilty of murder in the second degree, manslaughter, or not guilty at all, they must so find, however much sympathies or prejudices might incline them to find otherwise.

In criminal cases the prisoner is presumed to be innocent and the burden of establishing his guilt is upon the State, and the State must do this beyond a reasonable doubt. However, when the State has satisfied the jury beyond a reasonable doubt in an indictment for murder that prisoner slew deceased with a deadly weapon, the law presumes that the prisoner is guilty of murder in the second degree, and the burden shifts to the prisoner to satisfy the jury not beyond a reasonable doubt, but simply to satisfy them that he was excusable or that the crime is for the lesser offence, to-wit, manslaughter. So the first thing you will consider is, did the prisoner slay the deceased as alleged? The State relies on the following testimony (the Court here read the testimony in full). The State says this testimony should satisfy you beyond a reasonable doubt of the killing as alleged. You must say how that fact is, and if you are not so satisfied, that is, if you are not satisfied beyond a reasonable doubt that prisoner killed deceased, you need not go further. But if you should be so satisfied, then you will proceed to determine whether the crime be murder in the first degree, second degree, manslaughter or excusable homicide. Under the law, as the Court sees it, there is no evidence to support a verdict of excusable homicide or manslaughter. So that if you should be satisfied be-

STATE *v.* BOOKER.

yond a reasonable doubt that the prisoner did the killing it will be your duty to return a verdict of murder in the first or second degree as you may find the facts to be, applying the principles of law which I have given you. Now, although you may be satisfied beyond a reasonable doubt that the prisoner did the killing as alleged with a gun, which would make him guilty, as I have already explained, nothing less appearing, you should render a verdict of murder in the second degree. Before you can render a verdict of murder in the first degree you must be satisfied further, beyond a reasonable doubt, that the killing was wilful, deliberate and premeditated. Now it is not necessary that the purpose or design to kill must exist for any particular length of time, but it must have existed before the killing, else it will not be murder in the first degree. The testimony relied on by the State to show this is that which tends to show that on the way to the house of the deceased the first time, the prisoner and deceased had some words, that afterwards he left and in an hour returned with a gun and slew the deceased under the circumstances detailed by the witnesses, if they are to be believed. Prisoner says this ought not to so satisfy you, that the testimony of the State tending to show this is unreliable, but even if believed is not sufficient to fully satisfy you that the killing was wilful and premeditated. You are the ministers of the law chosen to decide the facts, to pass upon the weight of testimony, to say whether it is to be believed or not believed, to say that it establishes certain facts or that it does not. In weighing the testimony it will be your duty to consider the interest of any of the witnesses, if you find that there is any. In considering his flight, if he did flee, the fact that he is an ignorant man. To consider for instance that the witness Penny is the mother of deceased. To consider

any conflicting statements if you find there are any. To consider the demeanor of witnesses on the stand and any other facts or circumstances which tend to uphold or discredit the testimony of any of the witnesses. You will not let the fact that the prisoner did not go on the stand prejudice you against him.

The prisoner excepts to the charge of the Court as not indicating the sort or degree of malice which is required by the Act of 1893, Chapter 85. Exception also as not containing any one or more of the 21 requests for charge by prisoner. Motion for new trial overruled. Prisoner excepted and appealed from the judgment pronounced.

*Mr. S. G. Ryan,* for appellant.
*Mr. Zeb V. Walser, Attorney General,* for the State.

DOUGLAS, J.: This is a conviction for murder in the first degree. The evidence tended to show that the prisoner went to the home of the deceased in the morning of the day she was killed, and got some black pepper; that he went off, but came back in about an hour, with a gun, and without provocation shot the deceased in the back of the head, killing her instantly.

The only exceptions are to the charge and refusal to charge, none of which, in our opinion, can be sustained.

The able charge of his Honor correctly stated the law, and fully and clearly presented every reasonable contention of the prisoner. It met the requirements of Section 413 of *The Code,* which provides that the Court "shall state in a plain and correct manner the evidence given in the case and declare and explain the law arising thereon." He is not required to give in *ipsissimis verbis* the instructions prayed by the defendant, either in civil or criminal cases, even if they are proper. It is

sufficient if they are given substantially in the charge. *State* v. *Bowman*, 80 N. C., 432; *Rencher* v. *Wynne*, 86 N. C., 268; *State* v. *Boon*, 82 N. C. 637; *State* v. *McNeill*, 92 N. C., 812; *State* v. *Anderson*, 92 N. C., 732; *State* v. *Jones*, 97 N. C., 469; *State* v. *Brewer*, 98 N. C., 607; *Newby* v. *Howell*, 99 N. C., 149; *Michael* v. *Foil*, 100 N. C., 178; *Conwell* v. *Mann*, 100 N. C., 234; *State* v. *Hargrove*, 103 N. C., 328; *Edwards* v. *Phifer*, 121 N. C., 388; *Norton* v. *Railroad*, 122 N. C., 910, 934. In the last case on page 934, in line 13, a mistake of the printer inserted the word "objectionable" instead of "unobjectionable". What we said was: That the Court is not required to give the special instructions *as asked*, even when *unobjectionable.*" if they are substantially included in the charge. A clear and connected charge, giving all the proper instructions in their logical order, without undue prominence to any one phase of the case, is better calculated to give the jury a correct impression of the law as applicable to the facts under consideration than can be obtained from any number of special instructions. Of course the prisoner has the right to have every reasonable theory of his defence properly presented to the jury, but when this is done he has no further cause of complaint.

The exceptions are practically all pointed to the provisions of Chapter 85, of the Laws of 1893, the first two Sections of which are as follows:

"Section 1. All murder which shall be perpetrated by means of poison, lying in wait, imprisonment, starving, torture, or by any kind of wilful, deliberate and premeditated killing, or shall be committed in the perpetration or attempt to perpetrate any arson, rape, robbery, burglary or other felony shall be deemed to be murder in the first degree and shall be punished with death."

"Section 2. All other kinds of murder shall be deemed murder in the second degree, and shall be punished with imprisonment of not less than two nor more than thirty years in the penitentiary."

It has been settled by a long line of authorities that the killing with a deadly weapon implies malice, and that where it is admitted or proved beyond a reasonable doubt the prisoner is presumed to be guilty of murder, and the burden then rests upon him of showing such facts as he relies on in mitigation or excuse. This rule of the common law has never been questioned in this State. *State* v. *Byrd*, 121 N. C., 684 and cases therein cited.

Since the passage of the Act of 1893, this presumption extends only to murder in the second degree, and the State is still required to prove beyond a reasonable doubt the facts necessary to bring the homicide within the statutory definition of murder in the first degree. *State* v. *Fuller*, 114 N. C., 885, 898; *State* v. *Covington*, 117 N. C., 834, 862; *State* v. *Wilcox*, 118 N. C., 1131, 1132; *State* v. *Dowden*, Ibid 1145, 1150; *State* v. *Lockyear*, Ibid 1154, 1157; *State* v. *Thomas*, Ibid 1113, 1118; *State* v. *Finley*, Ibid 1161, 1172. In this last case the 8th syllabus is incorrect, as it differs from the opinion in asserting the presumption of murder in the *first* degree.

Where the circumstances of the killing do not bring it within the classes which by the statute are made *per se* murder in the first degree, the State must prove deliberation and pre-meditation, but this it may do circumstantially, and not necessarily by express and positive evidence. If all the circumstances surrounding the killing are such as satisfy the jury beyond a reasonable doubt that the homicide was wilful, deliberate and premeditated, it is their duty to find the prisoner guilty of

murder in the first degree.    This is the rule deducible from all the cases above cited, and is generally approved. 1 McClain on Criminal Law, Sec. 359; Desty Am. Crim. Law, Sec. 129k, p. 399; Bishop's New Criminal Law, Sec. 728, sub-sec. 3.

It appears from the evidence that the prisoner had some words with the deceased, went off, and came back in about an hour armed with a loaded gun with which he shot and killed deceased.    We may well adopt the words of the court in *People* v. *Conroy*, 97 N. Y., 62, 72, and say that "we are of the opinion that the jury was justified in inferring, from the facts and circumstances proved, that the death of the deceased was the result of deliberation and premeditation on the part of the prisoner."

The several prayers of the prisoner to the effect "that to convict of murder in the first degree, the prisoner must have used the same degree of deliberation and premeditation as would have been used if he had killed the deceased with starvation" etc., were properly refused. The law mentions certain kinds of homicide which are *per se* murder in the first degree, and then further provides that "*any* other kind of wilful, deliberate and premeditated killing" shall also constitute murder in the first degree.    In the former class, deliberation and premeditation are presumed, while in the latter, they must be proved.    Even if we were to make the law read "any other *like* kind" of killing, as contended by the prisoner, we could see but little difference between the act of one who lies in wait and one who arms himself and goes to seek his helpless and unsuspecting victim.

We are always willing and anxious to give to any one charged with a capital felony the fullest protection of the law, and it is only after the gravest consideration

that we ever affirm a judgment carrying with it the sentence of death. Whatever may have been his crimes, he who stands in the shadow of the gallows on the threshold of eternity receives our sincere commiseration; but we owe a duty to the majesty of the law and to the helpless thousands who can look to it alone for protection. In the performance of that duty the judgment must be affirmed.

Affirmed.