## STATE v. McDOWELL.

(Filed November 12, 1901.)

1. EVIDENCE—*Opinion Evidence—Competency.*

Whether there was light enough for the prisoner to see the deceased at time of killing is not an expression of opinion.

2. EVIDENCE—*Res Gestae—Competency.*

Evidence as to what prisoner on trial for murder said to a party after the shooting is not competent unless a part of the *res gestae*.

3. CONFESSIONS—*Admissibility.*

Where a prisoner denies knowing anything about the killing, such statements are not inadmissible as confessions.

4. INSTRUCTIONS—*Charge—Judge.*

Where the trial judge in his general charge gives "every reasonable contention of the State," it is erroneous to give an entirely new charge, containing "a powerful summing up" for the state.

5. EVIDENCE—*Weight—Expression of Opinion by Judge—The Code, Sec. 413.*

The instructions in this case are erroneous as expressing an opinion on the evidence.

6. INSTRUCTIONS—*Charge—Misstatement of Evidence by the Court.*

An incorrect and unfair statement of evidence against prisoner by the trial judge is erroneous.

7. WITNESSES—*Evidence—Near Relations—Instructions.*

It is error to instruct the jury that because of relationship the jury should carefully scrutinize the testimony, *without adding* that, if the jury believed the testimony it should have the same weight as if the witness was not interested.

INDICTMENT against Jim McDowell, heard by Judge *T. A.*

*McNeill* and a jury, at July (Special) Term, 1901, of the Superior Court of ROBESON County. From a verdict of guilty and judgment thereon, the defendant appealed.

*R. D. Gilmer, Attorney-General,* and *McLean & McLean,* for the State.

*Wade Wishart, W. D. Bizell,* and *R. E. Lee,* for the defendant.

FURCHES, C. J.   The prisoner was indicted for the murder of one Harlee Leak, convicted of murder in the second degree, sentenced to ten years in the penitentiary, and appealed. And this being a Court of errors, we can only consider the *errors of law* presented by the record.

There are several exceptions to the rulings of the Court upon the evidence, none of which can be sustained.

The witness James Jenkins was asked by the State: "Was it light enough for defendant to have seen deceased as he passed out of the house and know who he was?" To the question the prisoner objected, and upon his objection being overruled, excepted. This exception is put upon the ground that the question "involved the expression of an opinion by the witness," and *State v. McLaughlin,* 126 N. C., 1080, is cited as authority for this contention. But we do not think McLaughlin's case sustains the exception. In that case two statements of the evidence were made, and the witness was asked and allowed to testify that in his opinion they were substantially the same. This was purely a matter of opinion, and invaded the province of the jury. Not so in this case, which was a statement of what he knew by sight, and not what he believed by the exercise of his mind and powers of reasoning.

The next exception is to the exclusion of what the prisoner said to James Jenkins after the shooting. This exception

can not be sustained, as it does not appear to be a part of the *res gestae,* nor does it appear to be as to a conversation between the witness and Jenkins, about which Jenkins had testified.

Another exceptions is to the evidence of Sheriff McLeod at the time he arrested the prisoner. It appears that the Sheriff and three other men went to the house of the prisoner about 11 o'clock the night the deceased was killed, for the purpose of arresting him. The door was closed, and the Sheriff pushed it open, and he and the three persons with him, acting as his deputies went in and found the prisoner standing near the foot of the bed. They drew their pistols, told him that he was their prisoner, and to throw up his hands, which he did, and asked what was the matter. The Sheriff replied, "You know what is the matter; you have killed Harlee Leak." To this the prisoner replied: "That he had not done anything of the kind. He said he had not had his pistol; it had been home with his wife. He didn't seem to know much about the shooting." The evidence was received over the objection of the prisoner, upon the ground that it was not a confession obtained through fear. But the prisoner contended that it should not have been admitted under the rulings of this Court in the cases of *State v. Dildy,* 72 N. C., 325, and *State v. Davis,* 125 N. C., 612. It does not seem to us that either of these cases sustains the exception. In the case of *State v. Davis,* the defendant was arrested by one Conrad, and, while under arrest, Conrad said to him: "That he had worked up the case, and he had as well tell all about it." At first the defendant denied any knowledge of the alleged stolen articles, but afterwards said that another person had brought them into his house, and this evidence was held to be incompetent. But Davis' case differs from this in two respects. In that case the defendant was *induced* to make the confession by being told by the officer that he "had worked

up the case, and *he had better tell all about it"* ; while in this
case nothing of the kind is said to the prisoner, but he volun-
teered to say what he did.    But a greater distinction is that
in this case there was no confession.    The prisoner denied
all knowledge of the killing, and it is difficult to see how this
could be considered a *confession* of the crime.

There are other matters shown by the record which have
given us trouble.    It appears from the evidence offered by
the prisoner that other shots were fired than those fired by the
prisoner, and from different directions.    There is also evi-
dence tending to show that if the deceased was killed by the
prisoner, he would have been shot in the back; while the evi-
dence is that he was killed by a shot from the front.    It is
also in evidence from the Sheriff and othres with him at the
time of the arrest, that the prisoner's pistol, freshly fired, was
a 32 Iver & Johnson pistol.    This evidence was undisputed
and uncontradicted.    G. W. Waddell took the witness-stand
with his scales, and in the presence of the Court and jury
proceeded to weigh the bullet that killed the deceased, and to
weigh one taken from the prisoner's pistol by the Sheriff.
The bullet that killed the deceased weighed 105 grains, and
the bullet taken from the prisoner's pistol by the Sheriff, when
he arrested the prisoner, weighed but 85 grains; and the
witness Waddell testified that the bullet which killed the de-
ceased could not have been shot out of a 32 Iver & Johnson
pistol.    This evidence was uncontradicted.    And we find
that, at the request of the prisoner, the Court charged the
jury: "That if you find from the evidence that the deceased
came to his death by a bullet which could not have been fired
from an Iver & Johnson 32 cal. pistol, you should acquit the
prisoner."    But they found him guilty.    We suppose they
did not believe this undisputed testimony of the witness Wad-
dell.    The prisoner asked several instructions, all of which
were given but one, and that one should not have been given.

The State asked several special instructions, all of which were given and excepted to by the prisoner; and the case states: "His Honor, after having stated to the jury, in his general charge, every reasonable contention of the *State,* gave the following special instructions asked by the State:

"1. The prisoner, Jim McDowell, is charged in the indictment with murder in the first degree.　Under the indictment, the jury may find a verdict of murder in the first degree or the second degree, or manslaughter, or not guilty, accordingly as the jury may find the facts to be from the evidence produced upon the trial.　If the State has satisfied you beyond a reasonable doubt that the prisoner slew the deceased with a pistol, as contended for by the State, then the law presumes that the prisoner is guilty of murder in the second degree, and the burden shifts to the prisoner to satisfy the jury, not beyond a reasonable doubt, but simply to satisfy the jury of such mitigating circumstances as are sufficient in law to mitigate and reduce the murder in the second degree to manslaughter.　This instruction was given, and prisoner excepted.

"2. If you find beyond a reasonable doubt from the evidence in this case that the prisoner slew deceased with a pistol, and if the prisoner has failed to show to the satisfaction of the jury such mitigating circumstances as in law would reduce the killing to manslaughter, then the jury should find a verdict of murder in the second degree.　Given.　Prisoner excepted.

"3. The first thing for you to decide is, did the prisoner slay the deceased, as is alleged by the State, and the State relies on the following testimony to sustain its contention that the prisoner actually slew the deceased: The evidence of Dave Sammons, who was with the deceased at the time he was shot; Jim Jenkins, who was with the prisoner at the time he fired the pistol; John Leak, who testified as to threats on the afternoon before the killing; of Mary Faulk, who testi-

fied as to hearing three shots in the direction of Jim Jenkins'
house; of Dave Love, who heard three shots in the direction
of Jim Jenkins' house, and who also testified that he examined
pistol found in possession of prisoner after the killing, and
which had been recently shot; of Sheriff McLeod, who exam-
ined the pistol found in the possession of prisoner; of Jim
French, who was immediately behind the prisoner when he
fired the pistol, and other evidence tending to show that the
shot which struck Harlee was fired from the direction of Jim
Jenkins' house, in which direction the prisoner was at the
time of the shooting.   The State also relies upon what it
claims were contradictory statements made by the prisoner
immediately after the killing, and to the fact that he admitted
going home by an unusual and different route, and by his
denying any knowledge of the death of Harlee Leak at the
time he was arrested, and also upon the evidence of Jay
Barnes and Frank Barnes, who swore that three shots were
fired, and that they were in the direction of Jim Jenkins'
house.. If you are satisfied beyond a reasonable doubt that
the prisoner killed the deceased, then you will proceed to
determine whether the crime be murder in the first degree,
second degree or manslaughter.   If you find from the evi-
dence, beyond a reasonable doubt, that he did the killing as
alleged, with a pistol, nothing else appearing, you should
render a verdict of murder in the second degree.   Before
you can render a verdict in the first degree, the State must
prove to you, further beyond a reasonable doubt, that the kill-
ing was wilful, deliberate and premeditated.   It is not nec-
essary that the purpose or design to kill should exist for any
particular length of time, but that it must have existed before
the killing; otherwise it would not be murder in the first de-
gree.   The testimony relied on by the State to show murder in
the first degree is that of John Leak, that on the afternoon of
the day on which Harlee Leak was killed, the prisoner and de-

ceased had a quarrel in the barber shop in the town of Lumberton; that prisoner told deceased on leaving that he would get him, the exact language which you will find in the testimony of John Leak, and also upon evidence of Jim Jenkins, in which he testified as to the alleged statement of the prisoner that he went to Jim Jenkins' house that night to kill some damned son-of-a-bitch, and also upon the evidence of Jim Jenkins to the effect that at the time the prisoner shot, that Harlee Leak was about twenty-one steps in front of him in the lane, and that the prisoner had walked some distance after leaving Jim Jenkins' house behind Harlee Leak in the lane before the killing took place. You will remember the evidence as to these matters according to the testimony of the witnesses as produced upon the trial. It is your duty to decide these facts, to pass upon the weight of the testimony, to say whether it is to be believed or not, to say that it established certain facts or it does not. In weighing the testimony, it will be your duty to consider the interest of any witness, if you find there is any; to consider the conflicting statements, if there are any; to consider the demeanor of the witnesses upon the stand, and to consider any facts or circumstances which tend to uphold or discredit any of the testimony of any of the witnesses. As before stated, if you find beyond a reasonable doubt that the prisoner slew deceased with a pistol, and if you find further that the killing was wilful, deliberate and premeditated, and if you find these facts beyond a reasonable doubt, then you will render a verdict of murder in the first degree. On the other hand, if you find beyond a reasonable doubt that the prisoner slew deceased with a pistol and the killing was not deliberate or premeditated, then you will render a verdict of murder in the second degree, unless you find that the prisoner was guilty of manslaughter, or that the killing was the result of an accident. *State v. Booker,* 123 N. C., 713. This instruction was given, and defendant excepted.

34——129

"4. If you find from the evidence, beyond a reasonable doubt that the prisoner slew deceased as alleged by the State, and if you find that the killing was without deliberation and premeditation, and if you find that the prisoner did not intend to kill deceased, but if you go further and find from the evidence that prisoner discharged his pistol down the lane, as alleged by the State, toward the crowd of people in the lane, without regard to the consequences of his act, then he will be guilty of manslaughter. *State v. Vines,* 93 N. C., 493. This instruction was given, and prisoner excepted.

"5. If you find from the evidence, beyond a reasonable doubt, that the prisoner discharged his pistol carelessly and recklessly and unlawfully, and that he killed deceased in such manner accidentally, still it would be manslaughter, and if you so find from the evidence, you will return a verdict of manslaughter. In such cases the test of responsibility depends upon the conduct of the party accused, was unlawful, or even if it was not unlawful, if it was so grossly negligent, reckless or violent as necessarily to imply moral impropriety or turpitude. *State v. Vines,* 93 N. C., 493. This instruction was given, and the prisoner excepted.

"6. The Court charges you that if you find beyond a reasonable doubt that the prisoner discharged his pistol among a crowd of people in the lane near Jim Jenkins' house, knowing at the time that there were people in front of him, and if you find further beyond a reasonable doubt that the pistol was discharged, causing the death of Harlee Leak, then the prisoner would be guilty of manslaughter, even if he did not intend to do any harm to any particular person, or even if he intended it only in sport or to frighten someone. *State v. Vines,* 93 N. C., 493. This instruction was given, and prisoner excepted.

"7. It is the duty of the jury, in passing upon the evidence of the prisoner himself, and of his near relatives who testified

for him, to scrutinize their evidence with great caution, considering their interest in the result of the verdict, and, after so considering, the jury will give to it such weight as they may deem proper.    This instruction was given, and prisoner excepted.    Signed by C. M. McLean, Solicitor; McLean & McLean, Proctor & McIntyre, and John D. Shaw, Jr., associate counsel for State."

The case on appeal states that the whole evidence in the case has been sent up, and we have read the whole of it.    And from the view we have taken of the case, we thought it proper to insert in full the prayers of the State for special instructions.

We can not think the manner in which the trial was conducted is the ordinary practice of the Courts of this State. That after his Honor "had stated to the jury in his general charge *every reasonable contention of the State,* he should, at the request of the State, give an entirely new charge commencing: "The prisoner, Jim McDowell, is charged in the bill of indictment with murder in the first degree," etc. This charge, written by the attorneys for the prosecution, is a powerful summing up for the State.    It does not pursue the usual course, in asking special instructions, by asking the Court to charge some proposition of law predicated upon some fact the evidence tends to prove, but, as we have said, it is a powerful summing up of the whole argument for the State, after the Judge had "stated to the jury in his general charge every reasonable contention of the State."    This, we think, was calculated to prejudice the prisoner's case with the jury, if every word of *this* charge was correct.    But there are some expressions in *this* charge that are objectionable as matters of law.    In the third prayer the Court says, in summing up: "The evidence of Dave Sammons, *who was with* the deceased *at the time he was shot;* Jim Jenkins, *who was with the pris-*

*oner .at the time he fired the pistol;* Jim French, who was immediately behind the prisoner when he fired the pistol."

The prisoner, on cross-examination, testified : "I went home by the old bridge.   Jim McQueen was with me.   We went some out of our way."

And the Court, in this summing up, in giving the grounds relied on by the State, says: "The fact that he admitted going home by an *unusual and different route."*   This reads like the argument of counsel to a jury.   But it is not a correct and, as we think, not a fair statement of the prisoner's evidence.

It seems to us that the statements as to Dave Sammons, Jim Jenkins and Jim French were a violation of section 413 of The Code; and the statement as to the admission of the prisoner is incorrect and calculated to prejudice him in his defense.

In the seventh prayer, which was given, the Court, after instructing the jury to "scrutinize the evidence of the *prisoner's relations* with great caution, considering their interest in the result of the verdict, and, after so considering, the jury will give to it such weight as they may deem proper."   This charge is a very common one, and when applied to witnesses on both sides and properly applied by the jury, may do no harm. But the scrutiny referred to is for the purpose of aiding the jury in determining the credit of the witnesses, as the jury are to pass upon that, whether the witness is interested or not.   If they find the witness to be credible, and that he has sworn the truth, his testimony should have the same weight as if he was not interested; and it was error in the Court, when charging the jury upon the subject of interest, not to so have charged the jury. This, as all the other special prayers of the State, was excepted to, and the exception must be sustained.   *State v. Collins,* 118 N. C., 1203 ; *State v. Holloway,* 117 N. C., 730; *State v. Lee,* 121 N. C., 544; *State v. Apple,* 121 N. C., 584.

Error.   New Trial.

CLARK, J., concurring.    Though a Judge may think he has fully charged the contentions of both sides, when correct prayers for instruction are asked by either, it must rest in his sound discretion whether to give them or take the risk of their having been substantially given already in the charge. If the charges in themselves are correct, he is not forced to refuse them because he may think they have been already given, and thus subject the public to the expense of a new trial, if (as precedents show) ingenious counsel can find that every point therein made was not given in the main charge. Here, the Judge gave every charge asked by defendant (save one, which was properly refused), though he had given substantially his prayers in the main charge.    The fact that the State could not appeal from errors against the State, properly did not prevent him from showing equal liberality in giving instructions asked by its representative.

I think, however, there was error in those instructions in the two particulars pointed out in the opinion of the Court, and concur in the result on that ground alone.

MONTGOMERY, J., concurring.    He thinks that the defendant was prejudiced in his trial, as set out in the opinion in chief, by the second charge of his Honor—the giving of the special instructions of the Solicitor and his associate counsel. But he further thinks that the harm that may have been done can not be corrected by this Court as an error in law.    He concurs in the result.