### BOB BOGGS v. THE STATE.

No. 1336. Decided June 23, 1897.

#### 1. Continuance—New Trial.

If, on a motion for a new trial, in so far as it involves the action of the court in overruling an application for continuance, it is made to appear, in connection with the other testimony adduced on the trial, that the proposed absent testimony is not probably true, but totally false, it will be held, that the continuance was properly

refused and the motion for new trial was properly overruled, notwithstanding due diligence to get the witnesses may have been shown, and notwithstanding the proposed absent testimony would be material, if true.

**2.  Theft of Cattle—Additional Instructions Asked by Jury as to Penalty—Charge of Court.**

On a trial for theft of cattle, where the jury, after having retired to consider of their verdict, notified the court that they desired additional instructions; and the defendant having been brought into court, the jury stated, that they wanted "to know the law of from two to four years imprisonment; whether it has reference to the height of the crime or whether there is any respect of persons;" Held, the trial court correctly construed the question to mean, whether they should fix the punishment according to the enormity of the crime, the amount involved, and the attendant circumstances, or whether they could take into consideration the standing of the party; and correctly answered the question by instructing them that if they believed beyond a reasonable doubt that defendant was guilty as charged, then the amount of the punishment was in their discretion to be not less than two nor more than four years.

**3.  Circumstantial Evidence—Charge.**

See charge on circumstantial evidence, held sufficient.

APPEAL from the District Court of Burnet. Tried below before Hon. JOHN M. FURMAN.

Appeal from a conviction for theft of forty head of cattle; penalty, four years imprisonment in the penitentiary.

The material facts in the case can be readily gathered from the opinion.

The matters pertaining to defendant's application for continuance are elaborately stated in the opinion.

The charge of the trial court upon circumstantial evidence was as follows: "In order to warrant a conviction of a crime on circumstantial evidence, each fact necessary to the conclusion sought to be established must be proved by competent evidence beyond a reasonable doubt. All the facts (that is, the necessary facts to the conclusion) must be consistent with each other, and with the main fact sought to be proved; and the circumstances, taken together, must be of a conclusive nature, leading on the whole to a satisfactory conclusion and producing in effect a reasonable and moral certainty that the accused, and no other person, committed the offense charged. But in such cases it is not sufficient that the circumstances coincide with, account for, and therefore render probable the guilt of the defendant. They must exclude to a moral certainty every other hypothesis."

The case was one entirely of circumstantial evidence.

The matters connected with the additional instructions given, in response to questions asked by the jury, are fully set out in the opinion, and need no further statement.

*Mathews & Browning* and *Blackburn & Hammond,* for appellants.

*Mann Trice,* Assistant Attorney-General, for the State.

DAVIDSON, JUDGE.—Appellant and W. L. Yerger were indicted in separate indictments, charged with the theft of forty head of cattle, the

property of George Hammond. Upon the trial, appellant was convicted, and given four years in the State penitentiary.

When the case was called for trial, appellant filed his application for a continuance on account of the absence of Will Long, Cris Bolton, and W. B. Armstead. Will Long is alleged to be a resident of the Osage Indian Nation. Interrogatories were filed in the court looking to the taking of his depositions. Attachments were issued for Bolton and Armstead. It is stated in the application that Bolton was a resident of Presidio County, but had a ranch in the Osage Nation, of which Will Long had charge; that Armstead resided in Bandera County, and the cattle appellant is charged with stealing were obtained by appellant and Yerger from said Armstead for the purpose of being shipped to pasture lands in Oklahoma or the Indian Territory. He expected to prove by Long and Bolton that they were in Texas, going from the direction of Lampasas, and going in the direction of the pasture where the property was taken; that the defendant was coming from the direction of where the property was taken towards Lampasas, and met said Long and Bolton in the road; that he was en route to the ranch of "Bill Williams;" that Long and Bolton informed him that they had just passed Williams' residence, and ascertained that he was not at home, but had gone to San Antonio, whereupon the defendant turned and accompanied Long and Bolton on their journey; that this occurred about 6 or half-past 6 o'clock in the evening. The three camped for the night in what is known as the "Galbraith Pasture." This was in the immediate neighborhood of the pasture from which the cattle were that night stolen. They camped in the pasture that night, and about half-past 4 o'clock in the morning mounted their horses, and started in the direction of Liberty Hill. Riding in the direction of Liberty Hill, they, W. L. Yerger and defendant, met or overtook W. B. Armstead and —— Burton, who were driving a bunch of 2-year-old steers. Appellant informed Armstead of his previous meeting with Long and Bolton, and of his (appellant's) "desire to obtain cattle to pasture;" whereupon Armstead turned over his bunch of cattle to appellant and Yerger, to be shipped to White Eagle, Oklahoma Territory, the shipment to be made in Armstead's name; that appellant was to pasture said cattle for twelve months in said Territory, which was defendant's residence, he paying the freight on the cattle, and for this he was to receive $2.25 per head for each and all of said bunch of cattle. Armstead stated to him that he had business to transact near Lampasas, and instructed appellant to wire Burton at Lampasas when the cattle were shipped, which the defendant did. He does not know the whereabouts of Burton, nor his Christian name. This is the substance of the testimony that appellant expected to prove by the absent witnesses, as set out in the application for a continuance.

The evidence on the trial for the State (the appellant introducing none) discloses that appellant came to Texas in December, 1896, bringing his wife and child with him, and they were living on the place of Mrs. Yerger, the mother of his codefendant, W. L. Yerger, and that

W. L. Yerger also lived with his mother. On the evening preceding the theft at night, appellant and Yerger, or parties whom the witnesses testified they thought and believed to be Yerger and defendant, were seen riding through a pasture near that from which the cattle were stolen that night. Early the next morning, they were seen going from the direction of the pasture where the cattle were stolen, towards Liberty Hill, driving a bunch of 2-year-old steers very rapidly; the witness says "in a trot." The witness Rounsville testified that in this bunch were two animals which he noticed particularly, and described them accurately. These two were shown to be the property of Hammond, the alleged owner, and were in the pasture the day before the theft.

While the identification of the defendant and Yerger at this point was not as definite as it might have been, yet the testimony indicates that they were the men in charge of the cattle. This was on the morning of the 9th of March. During that day appellant and Yerger were in Liberty Hill, and appellant was introduced to the railroad agent by Yerger as W. B. Ohmstead. Arrangement was made by defendant, under the name of Ohmstead, with the railroad agent, to ship the cattle to White Eagle, Oklahoma Territory, thirty-five head being the number specified, which was the number shipped. Yerger accompanied these cattle on the train from Liberty Hill, and reached White Eagle on the train with the cattle, the agent giving him free passage over the line of railroad. The defendant took the passenger train at the same point, and reached White Eagle, coming from the north, instead of the south, a few hours before the cattle reached that point. This was in the section of country where defendant alleged his residence to be. When the cattle reached this point, the defendant introduced W. L. Yerger to the railroad agent there as W. B. Ohmstead. The cattle were unloaded, placed in the pen, and early the next morning their brands and marks were changed; the marks so as to obliterate the old mark in one ear entirely, making a different mark in that ear, and the brands changed from $\theta$ to $|\theta|$. They were then carried and placed in the pasture, and the parties returned at once to Texas, and were shortly afterwards arrested, charged with the theft of the cattle. On the same day the cattle were shipped, defendant telegraphed Z. A. Burton, at Lampasas, Texas, as follows: "Will leave at 2:30 p. m. W. B. Ohmstead." The cattle stolen were 2-year-old steers, kept by the owner in one of his pastures, and salted by him every few days, and seem to have been trained to come at his call. Among them were two young steers noted by the witness Rounsville, and seen driven by the parties above mentioned, early in the morning after the theft at night. These same two steers were found in the pasture in the Territory.

It may be conceded, so far as the decision of this case is concerned, that the diligence was sufficient, and, if the testimony is true, the continuance should have been granted. If Armstead and Burton committed the theft of the cattle, and appellant was not present at the time, nor participated in such theft as a principal, then his receiving the cattle

the next day from Armstead, knowing them to have been stolen, would defeat this action, for they would not be guilty of theft under that state of case. Therefore, if true, the testimony would be material. But we are of opinion not only that the testimony is not probably true, but it is totally false. A casual inspection of the record, the statement of facts, and the application for a continuance makes and renders this conclusion correct. For instance, appellant swears in his application for a continuance that he did not know the name of Burton, when he had, about a month before that, sent a telegram to Z. R. Burton, in obedience to the instruction, as he swears in his application, of W. B. Armstead. Again, the appellant had himself introduced to the railroad agent at Liberty Hill as W. B. Ohmstead, and in that name shipped the cattle which he asserts he had a right to control, innocently; and at the other end of the line, in the Indian Territory, he, being known there, introduced Yerger as W. B. Ohmstead, the shipper of said cattle. Yerger was well known at Liberty Hill as W. L. Yerger, having been raised a few miles from said place. If appellant's possession of the cattle was under a contract for pasturing from Armstead, it was certainly a singular proceeding on his part to make these false representations at both ends of the line, and to change the marks and brands on the cattle, in order to destroy, as far as he could, their identity. No intelligent or reasonable set of men occupying the place of jurors could or would have credited such a remarkable story. The story of appellant in regard to these matters is more remarkable for its ingenuity than for his honesty of purpose in setting it up. The story itself, as related by him, independent of the evidence in the case on the trial, bears the strongest evidence of dishonesty and falsity. The action of the court in overruling the application for a continuance was correct, and his action sustaining this ruling in overruling the motion for a new trial was also correct.

An exception was reserved to the charge of the court on circumstantial evidence. We have read this charge of the court, and find it in strict compliance with the law. It is free from the exception urged.

By his third bill of exceptions, it is shown that, after the jury had retired to consider of their verdict, they returned into the court room, while the court was at recess, and sent for the presiding judge. When he reached the court room, court was opened, and he addressed the jury in the following language: "Gentlemen of the jury, I am informed that you want some further instruction. I can not give you any verbal instruction, and I can not give you any instructions in the absence of the defendant. Is it a fact that you want any further instructions?" Upon receiving an affirmative answer as to one point (the point not being stated), the defendant was brought into court. The court then asked the jury upon what point they wanted further instructions, and one of the jurors answered as follows: "I want to know the law of from two to four years imprisonment—whether it has reference to the height of the crime, or whether there is any respect of persons." The court then instructed the jury as follows: "In response to your request for further in-

structions as to the punishment affixed by law for the theft of cattle at not less than two nor more than four years confinement in the penitentiary, you are charged that in the event you believe from the evidence, beyond a reasonable doubt, that the defendant is guilty as charged, then it is your duty to affix his punishment at confinement in the penitentiary for any term of years, not less than two years nor more than four years, as, in your judgment and discretion, the evidence may require and demand." This exception was reserved to this proceeding, upon the ground that the charge was not given in response to the question asked by the jury, and was not upon the point upon which the jury asked instructions, and served to emphasize the general charge of the court in regard to punishment, and in regard to inflicting punishment in accordance with their judgment and discretion. There was no action taken by the court, in regard to any matter connected with this case, in the absence of the defendant. When the jury requested further instructions, appellant was at once brought into court, and the jury were then requested to state the point upon which they desired further instructions. While the question put by the juror was not as intelligible as it might have been, yet we think the court correctly understood the import of the question, and correctly answered it. The question put by the juror sought to inquire of the court whether they should fix the punishment according to the enormity of the crime, the amount involved, and the attendant circumstances, or whether they could take into consideration the standing of the party; and the court correctly answered them, as set out in the statute, that if they believed from the evidence, beyond a reasonable doubt, that the defendant was guilty as charged, then the amount of punishment to be affixed was, in their discretion, to be not less than two nor more than four years. We are of opinion that this action of the court was correct.

There is no merit in any of the remaining matters set up by appellant worthy of consideration. The testimony is ample and the facts show a deliberately planned, well executed theft, in pursuance of a conspiracy entered into for that purpose. The judgment is affirmed.

*Affirmed.*