EUGENE MASON v. THE STATE.

No. 3134. Decided June 3, 1914.

### 1.—Murder—Continuance—Attorney and Client—Undue Haste.

Where, upon trial of murder, the case was not called for trial until thirteen days after defendant was served with a copy of the indictment, and twelve days after an attorney had been appointed by the court to represent him, and seven days after his attorney had been employed in the case, the court was not

guilty of undue haste in forcing him to trial, and the contention that he had not sufficient time to prepare for trial is untenable, in the absence of a showing that he was thereby deprived of other testimony.

## 2.—Same—Arraignment—Absence of Counsel.

Where defendant's counsel, upon trial of murder, had overstayed more than twice the length of time they had been granted by the court, and the officer of the court had failed to locate them, the fact that defendant was arraigned while they were not in the court room, but no further action taken, this, in the absence of any injury shown, presents no error.

## 3.—Same—Practice—Conferring with Witnesses.

Where defendant complained of the action of the court in not taking a recess to permit him to confer with his witnesses; but the record showed that the court gave him ample time to do so, there was no error.

## 4.—Same—Remarks by Judge.

While it is always better practice for the court to rule on evidence without making any additional remarks, yet it is only where such comment is upon the weight of the evidence that such action presents error, and, where this does not appear from the record, there was no error.

## 5.—Same—Evidence—Bill of Exceptions—Appearance of Defendant.

Upon trial of murder, there was no error in introducing in evidence the appearance, acts and conduct of defendant when not under arrest and when under suspicion; besides, the bill of exceptions was defective in not containing the testimony objected to.

## 6.—Same—Unknown Instrument Used.

Where the indictment alleged that deceased was killed with some sharp instrument to the grand jury unknown, there was no error in permitting the district attorney to testify as to the efforts made by the grand jury in trying to ascertain the character and kind of instrument used.

## 7.—Same—Evidence—Admissions.

As the testimony which defendant offered was admitted by the prosecution and to go to the jury, there was no error.

## 8.—Same—Witness—Insanity—Presumption.

Where defendant's witness had been adjudged insane some eighteen months prior to the trial of the instant case and said judgment had never been set aside, it must be presumed in law that he was insane at the time of the trial and that his testimony was of little value.

## 9.—Same—Argument of Counsel—Allusion to Defendant's Failure to Testify.

A mere reference to the fact that the testimony did not disclose the whereabouts of the defendant during the time of the homicide was not a comment on defendant's failure to testify by State's counsel.

## 10.—Same—Circumstantial Evidence—Charge of Court—Reasonable Doubt.

Where, upon trial of murder, the court's charge on circumstantial evidence followed approved precedent and applied the reasonable doubt to the whole case, there was no error in refusing requested charges on this issue, nor was it necessary to apply the reasonable doubt to each fact in the chain of circumstances.

## 11.—Same—Requested Charges.

Where the requested charges, in so far as they applied to the facts, were fully covered by the court's main charge, there was no error in refusing same.

Vol. 74 Crim.-17.

**12.—Same—Conduct of Counsel—Bill of Exceptions.**

Where the bill of exceptions as accepted showed that the counsel was very disrespectful to the court, there was no error in the court's action in ordering the officer to seat counsel, etc.

**13.—Same—Misconduct of Jury—Allusion to Defendant's Failure to Testify.**

In the absence of testimony on the misconduct of the jury, it must be presumed that the court correctly overruled a motion for new trial on this ground, it being shown by affidavits for the State that no allusion to defendant's failure to testify was made in the jury room, further than reading the charge of the court that this must not be done, etc.

**14.—Same—Confessions—Exculpatory Statements—Arrest—Withdrawal of Testimony.**

Where, upon trial of murder, the declarations of the defendant, which were of an exculpatory nature, made while under arrest were admitted in evidence, but afterwards withdrawn by the court and a number of witnesses testified to the same statement made by the defendant when he was not under arrest, there was no reversible error, as in the first place the evidence was admissible, and, in the second place, the testimony was withdrawn; and, besides, the same facts were proven by a number of other witnesses who talked with the defendant prior to his arrest. Davidson, Judge, dissenting on the ground that the testimony was inculpatory. Following Whorton v. State, 69 Texas Crim. Rep., 1; Ferguson v. State, 31 Texas Crim. Rep., 93. Overruling Bailey v. State, 40 Texas Crim. Rep., 150, and other cases.

Appeal from the District Court of Bowie. Tried below before the Hon. H. F. O'Neal.

Appeal from a conviction of murder; penalty, imprisonment in the penitentiary for life.

The opinion states the case.

*J. S. Crumpton* and *O. B. Pirkey,* for appellant.—On question of arraignment in the absence of counsel: Early v. State, 1 Texas Crim. App., 248; Bell v. State, 32 Texas Crim. Rep., 436.

On question of remarks by judge: Drake v. State, 65 Texas Crim. Rep., 282, 143 S. W. Rep., 1157; McMahan v. State, 61 Texas Crim. Rep., 489, 135 S. W. Rep., 558; Copeney v. State, 10 Texas Crim. App., 473.

On question of right of counsel in making his objections to the court: Ward v. State, 70 Texas Crim. Rep., 393, 159 S. W. Rep., 272.

On question of confessions: Henzen v. State, 62 Texas Crim. Rep., 336, 137 S. W. Rep., 1141; Ayers v. State, 62 Texas Crim. Rep., 428, 137 S. W. Rep., 1146; Wright v. State, 37 S. W. Rep., 732; Bailey v. State, 49 S. W. Rep., 102; Walton v. State, 55 S. W. Rep., 566; Johnson v. State, 66 S. W. Rep., 845; Parks v. State, 79 S. W. Rep., 301; Morales v. State, 36 S. W. Rep., 435.

*C. E. Lane,* Assistant Attorney General, *L. E. Keeney,* District Attorney, for the State.—On question of arraignment of defendant in absence of counsel: Beaumont v. State, 1 Texas Crim. App., 533.

On question of remarks by judge: Brantley v. State, 42 Texas Crim.

Rep., 293; McGee v. State, 37 id., 668; Rodriguez v. State, 23 Texas Crim. App., 503; Gregory v. State, 43 S. W. Rep., 1017.

. On question of defendant's confessions: Whorton v. State, 69 Texas Crim. Rep., 1, 152 S. W. Rep., 1082.

On question of allusion to defendant's failure to testify: Link v. State, 164 S. W. Rep., 987; Coffman v. State, 165 S. W. Rep., 939; Reinhard v. State, 52 Texas Crim. Rep., 59, 106 S. W. Rep., 128.

On question of misconduct of jury: Smith v. State, 52 Texas Crim. Rep., 344; Patterson v. State, 63 Texas Crim. Rep., 297; Coffman v. State, 165 S. W. Rep., 939; Havord v. State, recently decided.

HARPER, JUDGE.—Appellant was prosecuted and convicted of murder, and his punishment assessed at confinement in the penitentiary for life.

In the first bill of exceptions it is complained that the court erred in overruling appellant's application for a continuance. It is shown by the bill that the attendance of all witnesses for whom process had been issued was secured, but appellant's attorneys make an equitable application to the court on the ground that they had not had time to make proper investigation and preparation for the trial. The offense is alleged to have been committed on the 2nd of December, 1913, and appellant was arrested the next day. In a day or two thereafter he conferred with his present attorney, and employed him in the case, conditioned upon a certain amount of money being paid in cash. Appellant's two brothers agreed to pay this money, but failed to do so. The indictment was returned into court on the 16th day of December, and on that day the court conferred with the attorney whom appellant had sought to employ and whom he did afterwards employ, in regard to the setting of the case, and the case was set for December 29th. The employment not being consummated, the court on the 17th day of December appointed an attorney to represent appellant, Mr. O. B. Pirkey. This was twelve days before the case was called for trial. On the 22nd of December the employment of Mr. Crumpton was consummated, and that day process was issued for appellant's witnesses, and all those issued for attended court.

Our Code permits a case to be called for trial two days after a defendant had been served with a copy of the indictment (art. 557, C. C. P.), and where counsel is appointed, the Code provides that such counsel shall be granted one day in which to prepare for trial (art. 558). This case was not called for trial until thirteen days after appellant was served with a copy of the indictment, and twelve days after Mr. Pirkey had been appointed by the court to represent him, and seven days after Mr. Crumpton had been employed in the case. This seems to have given him ample time as contemplated by our laws, and the "court was not guilty of undue haste," as contended by appellant. In the application it is only stated that appellant "hoped to be able to develop other facts" without stating what such facts were or would be, and in the motion for a new trial it is not attempted to be shown that he was deprived of any testi-

mony, or the testimony of any witness, or that he had ascertained any other or additional facts that would be in the least beneficial to him. Under such circumstances we must hold that the court did not abuse the discretion confided to him by law.

The next contention is that the court erred in having appellant arraigned during the absence of counsel. The facts would show that after the jury had been selected and empaneled, before proceeding further, appellant's counsel requested a ten minutes recess that he might confer with some witnesses. This was granted by the court. Instead of taking only ten minutes, the trial judge states he waited twenty-five minutes, and being unable to find counsel, he ordered the district attorney to arraign the appellant, and he did so, appellant's counsel coming in the courtroom while the indictment was being read to the jury, and arriving in time to enter a plea of "not guilty." We know of no provision of the Code which requires that counsel shall be present at all stages of the proceedings in a criminal case. It does so provide as to the defendant (art. 757), but it only states that counsel shall also be called. In this case the court states he had the officers try to find counsel and they failed to do so. While the law provides that in a felony case the appellant shall be present at all stages of the proceedings, yet it has been held since the law was passed allowing a defendant to remain on bond, if he wilfully or intentionally absents himself while some proceeding takes place, it will not present reversible error, unless the record discloses he may have suffered injury thereby. As before stated, the defendant was present, and as appellant's counsel had over-stayed more than twice the length of time they had been granted by the court, and the officers of the court had failed to locate them, the fact that appellant was "arraigned" while they were not in the courtroom, but no further action taken, in the absence of any injury shown, presents no error. Appellant cites us to no case from this State sustaining his contention, but refers us to the case of Kansas v. Moore, 61 Kan., 732. In that case it is shown that under the laws of Kansas pleas to quash, etc., must be filed before arraignment. In this State there is no such provision, and while the Kansas case holds the right to have counsel present at the arraignment to be a fundamental right, yet we do not think it so under our Constitution and laws. It is true that our Constitution guarantees one the right to be represented by counsel in a capital case, and if by the arraignment he had been deprived of any right, or the right to file any plea, or he could in the remotest sense have been injured in his rights by being arraigned while his counsel was not in the courtroom, we would hold it error, but nothing of that character appears in this case.

It appears that this case went to trial on Tuesday, and State's counsel rested its case Saturday at noon. Counsel moved a recess of court until Monday morning; that was denied, and the court took a recess only until 1:30 p. m. Appellant complains of this action of the court, saying he had not time to converse with his witnesses. The court in approving the bill states: "I never at any time refused to permit defendant's

counsel to confer with any or all the witnesses. This case was delayed time and again to permit counsel to talk to witnesses. I declined to postpone this case from Saturday noon to Monday because there was in attendance a great number of witnesses from Cass County, at great expense to the State, besides counsel had a week in which to confer with the witnesses, at noon hours, also after adjourning hour. With this explanation this bill is approved and ordered filed." As thus qualified the bill presents no error.

It appears that while Mrs. Nellie Poarcher was testifying, she was asked by counsel for the State, "About what time did you find and ascertain that he had been killed and robbed up there?" Appellant objected to the question. In overruling the objection the court stated, "I think that is a part of the res gestae." While it is always better for the court to rule without making any additional remarks, yet it is only where such comment is upon the weight of the testimony that such action presents error. In this case the remark can not be construed into informing the jury as to what weight to give the testimony. The answer to the question is not presented in the bill, nor the testimony adduced, and we could not, therefore, judge whether or not it would have been hurtful, if it had been upon the weight of the testimony.

In bill of exceptions No. 5 it is complained that Ross Powell was permitted to testify, and then, without reciting the testimony, says see statement of facts, page 77. The bill should have contained the testimony objected to. If we turn to the statement of facts we could not by reading page 77 get the connection of that page of the testimony with his entire testimony, for the testimony of this witness covers a number of pages. But if we read his entire testimony we learn that Mr. Powell had a conversation with defendant the evening after the homicide, and before defendant's arrest, and in that conversation he denied going to Texarkana, and claimed to have gotten off the train beyond where it left the yard at Springdale; that he told appellant that he, the witness, understood that he had gone to Texarkana with deceased, but appellant denied that he had done so; that while he was talking with appellant, appellant was nervous and excited; that he had a haggard appearance, and looked to have lost sleep. That he had known appellant for years, and he had never seen him in this condition before. In the light of the testimony in this case, and all the testimony of this witness, this testimony was clearly admissible, for it made manifest that appellant was made aware that he was under suspicion, and his acts and conduct when not under arrest and when no officer was present, would certainly be admissible in a case depending on circumstantial evidence.

The bill of indictment in this case alleges that deceased was killed by being cut and stabbed with some sharp instrument to the grand jury unknown. The district attorney testified as to the efforts made by the grand jury in trying to ascertain the character and kind of instrument used. In this there was no error.

It is made to appear that while Lige Roberts was testifying, that ap-

pellant desired to prove by him that he, appellant, on the day he went to Texarkana with deceased invited and insisted on Roberts going to Texarkana with him. The court excluded this testimony at the time it was first offered, but later changed his ruling and told counsel he would admit the testimony. Mr. Roberts having gone home, State's counsel admitted as a fact that appellant on that occasion did insist on Roberts going with him. As this testimony was admitted to go to the jury as a proven fact, the bill presents no error.

J. A. Bramlett was a witness for the defendant, and on cross-examination the State was permitted to elicit from this witness that some eighteen months prior to this trial he, Bramlett, had been adjudged insane, and that said judgment had never been set aside. This was admissible on the credit to be given the testimony of the witness. In law, under such circumstances, he would be insane at the time of this trial, unless it should be affirmatively shown that he had regained his mental faculties, and if insane, certainly his testimony would be entitled to but little credit.

Appellant did not take the stand as a witness to testify in his behalf, but he did introduce testimony as to his whereabouts after 9 o'clock that night in Texarkana, and one of the main contentions of appellant is that taking the time that deceased is shown to have been killed, at the place where he was killed, and for him to have been with Charles Ellum at the union depot in Texarkana from 9 o'clock to 10 o'clock, rendered it impossible for him to have been at the scene of the homicide. That the depot was two miles away from the place of the homicide, and taking into consideration the time he was killed until 9 o'clock, he could hardly have gotten to the union depot by 9 o'clock. Under such circumstances it was not improper for State's counsel to comment on the fact that it was not shown by the testimony where appellant was from the time the train arrived in Texarkana until 9 o'clock. To refer to the fact that the testimony did not disclose the whereabouts of defendant during that time was not a comment on defendant's failure to testify, for during those hours he was certainly in the town of Texarkana, and he could have called some witness as to his whereabouts if he did not object to it being known. He certainly knew where he was, of course, and could have testified to that fact, but he also knew who he was with, and from the fact he had called no one to testify in regard thereto was a legitimate matter of comment.

The court's charge on circumstantial evidence has been frequently approved by this court, and is not subject to the criticisms contained in appellant's objections to the charge. (Moseley v. State, 59 Texas Crim. Rep., 90, 127 S. W. Rep., 178; Reeseman v. State, 59 Texas Crim. Rep., 430, 128 S. W. Rep., 1126; Trevino v. State, 38 Texas Crim. Rep., 64; Boggs v. State, 38 Texas Crim. Rep., 82; Baldez v. State, 37 Texas Crim. Rep., 413; Bell v. State, 71 S. W. Rep., 24.) And having given the charge he did, it was not necessary to give the special charges requested on this issue, nor was it necessary to apply the law of reasonable doubt

to each fact in the chain of circumstances, when the court applied the doctrine of reasonable doubt to the whole case, and gave an approved charge on circumstantial evidence.

The other criticisms of the court's charge present no error, and the special charges in so far as they are the law of this case were fully covered by the court's main charge.

It appears during the trial of the case and while Mr. Watlington was on the witness stand, the State desired to prove some statements made by appellant, and defendant was objecting thereto. The court overruled the objection, when appellant's counsel insisted on stating the reasons why he thought the testimony was inadmissible. The bill shows that the same objections had been made to the testimony of three other witnesses and reasons then stated, and the court would not permit counsel to again state his reasons. Upon counsel insisting the court ordered him to sit down, and counsel not doing so, the court ordered the sheriff to set him down. In approving the bill the court states: "I had considerable trouble with the attorney in this case. When I would rule on a question, he would continue to talk and I could not get him to stop; I was compelled to call on the sheriff to seat counsel. Counsel was very disrespectful to the court." Appellant accepts this bill as thus qualified, and he is bound by the qualification. Under it the bill presents no error.

Appellant attached to his motion for a new trial the affidavits of some of the jurors stating, "That after the jury had retired and was considering their verdict, some one of the jurors mentioned the fact of the failure of the defendant to testify." The State contests this ground of the motion, and attaches the affidavit of the foreman and eight of the other jurymen to the contest. The foreman testifies that while he was reading that portion of the charge of the court instructing them: "A defendant in a criminal case may or may not testify in his own behalf just as he pleases. If he fails to testify such failure shall not be taken as a circumstance against him, neither shall such failure to testify be discussed or commented on during the trial. It shall not be even alluded to. The defendant has not testified in this case. This is his privilege and right and when you retire to consider your verdict in this case, you will not discuss, comment on, or even allude to such failure to testify. It shall not be considered by you at all for any purpose whatever, but you shall wholly ignore such failure to testify," one of the jurymen said: "The defendant did not testify in this case, but we must not consider it at all," and that this was all that was said. The other eight jurymen sustain him. The judgment shows that the court heard evidence on this ground in the motion, but the evidence is not before us except in so far as shown by these affidavits. Under such circumstances we can but hold the court did not err in the premises.

These are all the questions presented by the record except one, which is presented in six different bills of exception. On all the questions hereinbefore discussed the entire court agree, but on the question hereinafter discussed Judge Davidson does not agree to the disposition made

thereof, but thinks it presents such error as should cause a reversal of the case, while the writer of the opinion and Presiding Judge Prendergast think the testimony was admissible, and the bills present no error.

By these bills it is shown that appellant was arrested at his home the night after the homicide, and that shortly after his arrest to some six different persons he stated that while he did get on the train with Mr. Thaggard, the deceased, at Springdale, he got off the train at Alamo and walked back home; that he did not go to Texarkana that night. This in substance is the testimony he objected to each of the witnesses testifying to. In approving one of the bills the court says: "Examined, approved and ordered filed as a part of the record in this case with the following explanation: This testimony was allowed to go before the jury over the defendant's objection, on January 2, 1914, but later, on the 5th of January, same was withdrawn from the jury and the court in his charge to the jury asked that they not consider said testimony. This statement of the defendant was exculpatory, because if defendant got off the train at Alamo as he stated, he could not have been in Texarkana at the time the murder was committed. This evidence was admissible under the decisions of our Court of Criminal Appeals decided in the case of Whorton v. State in 152 Southwestern Reports, page 1082. A number of the witnesses testified to the same statement made by the defendant when he was not under arrest as appears in the record." The court was correct in holding that the evidence was admissible under the rule of law as announced in the Whorton case, supra, and the only error he committed was in excluding the testimony and instructing the jury not to consider it. But this was error in favor of the defendant and against the State, and the only way he complains of this action is that the court erred in originally admitting the testimony, and such error was not cured by withdrawing the testimony. Had the testimony been inadmissible, as this fact was proven by a number of witnesses who talked with defendant about the matter prior to his arrest, when the court withdrew that portion of the testimony which showed the same statement to have been made after his arrest, it would not present reversible error. It is, however, useless to cite the authorities on that question, as we hold the testimony admissible, being exculpatory in its nature, and showing a state of facts which if true would render it impossible for appellant to have committed the offense, and, therefore, such statement could not by any stretch of the imagination be construed to be a confession of guilt. In Whorton's case we discussed the distinction between exculpatory statements and inculpatory statements, or confessions, and frankly admitted that the authorities in this State were in conflict, and we then carefully considered those cases now cited by appellant, and overruled them, but that no mistake may hereafter be made, we here and now expressly overrule each of the cases, holding that exculpatory statements come within the same rule as confessions of a defendant. In addition to the authorities in Whorton v. State, 69 Texas Crim. Rep., 1, 152 S. W. Rep., 1082, we have had our atten-

tion called to Wigmore's work on Evidence, sec. 821, Vol. 1. That learned writer says:

"What is a Confession? Denials, Guilty Conduct, and Self-contradictions, distinguished.. A confession is an acknowledgment in express words, by the accused in a criminal case, of the truth of the main fact charged or of some essential part of it. It is to this class of statements only that the present principle of exclusion applies. In this sense, therefore, there are in particular three things which fall without the meaning of the term 'confession,' and are thus not affected in any way by the present rules, namely, (1) guilty conduct, (2) exculpatory statements, and (3) acknowledgments of subordinate facts colorless with reference to actual guilt. •

"(1) The conduct of an accused person falls clearly without the present principle, which rests on the theory that the trustworthiness of the accused's assertions is destroyed or weakened by circumstances supplying a motive for false assertion (post, sec. 822). That which is not an assertion, in some form or another, can therefore not be within the scope of such a principle; its probative use is not testimonial but circumstantial; and the frequency of its employment, free from the present rules, may be seen by perusing the numerous rules of circumstantial evidence (ante, secs. 272-284) which apply to such evidence. The accused's conduct, therefore, consisting in fleeing from arrest, concealing the traces of crime, fabricating evidence, suppressing testimony, and other behavior indicative of a guilty consciousness, falls without the present rules.

"(2) Exculpatory statements, denying guilt, can not be confessions. This ought to be plain enough, if·legal terms are to have any meaning and if the spirit of the general principle is to be obeyed. This necessary meaning for the term 'confession' is generally conceded."

In commenting on this rule of law, Mr. Wigmore says: "The authorities dealing with this class of evidence sufficiently show that it is admitted without regard to the confession-rules. In the courts of Texas alone, it would seem, the heresy prevails that conduct may be treated as a confession." Again he says: "In Texas, the sound doctrine, *originally accepted,* seems to have been ignored later," citing Ferguson v. State, 31 Texas Crim. Rep., 93. The Ferguson case was cited and followed in Davis v. State, 24 S. W. Rep., 651, and by examining our reports it will be found that the rule of law announced in the Ferguson case was followed from the organization of our courts until the rendition of some later opinions when the court undertook to give to the term "confession" as used in our Code a meaning never theretofore attributed to the word, and which now has not the sanction of any textwriter so far as we have been able to ascertain. As supporting the rule of law as announced by Mr. Wigmore, and that the doctrine in the Bailey case, 40 Texas Crim. Rep., 150, is a "heresy" as said by that eminent law writer, he cites cases from almost every State in the Union, and gives a history of the rule showing much research and learning. Pentecost v. State, 107 Ala., 81; People v. Ammerman, 118 Cal., 23;

Mora v. People, 19 Colo., 255; 1810, Swift, Evidence, Conn., 133; Powell v. State, 101 Ga., 9; State v. Spillers, 105 La., 163; Taylor v. State, 37 Neb., 788; State v. McDowell, 129 N. C., 523; State v. Vaigneur, 5 Rich. L., 400; Goodwin v. State, 114 Wis., 318; Michaels v. People, 208 Ill., 603; State v. Campbell (Kan.), 85 Pa., 784; State v. Thomas (Iowa), 109 N. W., 900; State v. Royce, 38 Wash., 111. We could continue these citations from this and other works indefinitely, but in addition to the authorities herein cited and cited in the Whorton case, supra, we will only quote the following short excerpts from Mr. Wigmore's work:

"1846, Ruffin, C. J., in State v. Broughton, 7 Ired., 96, at page 101: 'It is altogether a mistake to call this "evidence of a confession by a prisoner." It has nothing of that character. It was not an admission of his own guilt, but on the contrary an accusation of another person. That it was preferred on oath in no way detracts from the inference that may be drawn from it unfavorably to the prisoner, as being a false accusation against another and thus furnishing with other things an argument of his own guilt.'

"1862, Rice, J., in State v. Gilman, 51 Me., 206, at page 225: 'The declarations of accused persons are not necessarily confessions, but generally, on the other hand, they are denials of guilt, and consist in attempt to explain circumstances calculated to excite suspicion.'

"1895, DeWitt, J., in State v. Cadotte, 17 Mont., 315, 42 Pac., 857 (the accused took the stand to explain how in self-defense he killed the deceased; the State offered various previous explanations of his, showing self-contradictions): 'The other objection was that a portion of this testimony was a confession by the defendant, and it was not shown that such confession was made freely. . . . We are satisfied that the statements of the defendant sought to be proved were not confessions at all. Instead of being confessions of guilt, they were statements of his self-defense, statements in which he admitted the killing, and endeavored to show that he was obliged to kill to save his own life. They were admissions, to be sure, of the killing, but self-defending statements as to the same. And this was precisely the position he occupied upon the trial. He relying on self-defense for acquittal, it was competent to attack his credibility by proving statements made out of court as to the self-defense, contrary to those which he made as a witness on the trial.'

"1899, Granger, J., in State v. Novak, 109 Ia., 717, 79 N. W. 465: 'Inaccurate use of such words as "confessions," "admissions," and "declarations," has led to some confusion in the cases; but, on authority and reason, there is a clear distinction between a confession and an admission or declaration, unless the admission or declaration has within it the scope and purpose of a confession, in which its distinctive feature, as an admission or declaration, is lost in the broader term "confession." A confession is a voluntary admission or declaration by a person of his agency or participation in a crime. . . . To make an admission or declaration a confession, it must in some way be an acknowledgment

of guilt. . . . The manifest purpose of (the defendant's) state-ments was to show himself innocent, and, if his statements are true, he is innocent of the crime charged; so that by no possibility could he have been induced, because of the promise of secrecy, to relate what was untrue, to his prejudice.'"

The effort made in some of the cases in this court to give to the term "confession" as used in the statute, a definition and meaning to include all character of statements, is, in our opinion, unwarranted, against the great weight of authority, and as said in the Whorton case, supra, we adhere to the rule announced in the case of Ferguson v. State, 31 Texas Crim. Rep., 93, which Mr. Wigmore says is the sound doctrine, and that in Texas alone is the "heresy" announced in the Bailey case, 40 Texas Crim. Rep., 150, given any recognition, and that case and those follow-ing it, as hereinbefore stated, are overruled.

The judgment is affirmed.

*Affirmed.*


DAVIDSON, JUDGE (dissenting).—I can not agree to the affirmance. The State's theory was that deceased was killed a mile and a half or two miles from where appellant introduced evidence to show he was at the time of the homicide. The witnesses he introduced place him at such time and place as that if true he could not have been the party who committed the homicide, but this evidence placed him in the City of Texarkana about the distance above mentioned from the place of the homicide. The substance of this evidence was to the effect that he was in Texarkana on the night of the homicide, but was so situated that he could not have committed it. In other words, he proved an alibi but yet placed himself in the City of Texarkana. He was arrested the next day or within a day or so after the homicide. While under arrest the State was permitted to prove by parties having him under such arrest, state-ments that he, appellant, made to these officers. These statements were, in a sense, exculpatory, that is, the statements were to the effect that he was not in Texarkana on the night of the homicide, but was at a different place or different places some miles from the city. Of course this evidence was introduced by the State to meet and disprove the evidence introduced on the trial by him to show his presence in the City of Texarkana, but absent from the homicide. My brethren, sus-taining the ruling of the trial court admitting this testimony, place it purely and simply upon the proposition that it was exculpatory and therefore beneficial to him. The State did not so regard it and did not introduce it for that purpose, but to show that the testimony given on the trial was false. Taken in that sense, it is to be treated as a con-fession, or at least inculpatory testimony, and being under arrest, under all the authorities it was not admissible either as original or impeach-ing testimony. The question of impeachment, of course, is not in this case as defendant did not take the witness stand. The rule is well settled in Texas, that the unwarned statements of the defendant while under arrest can not be used against him for any purpose. See

Branch's Crim. Law, sec. 234, for collation of authorities; Ware v. State, 3 Texas Crim. Rep., 597; Morales v. State, 36 Texas Crim. Rep., 234; Brown v. State, 55 Texas Crim. Rep., 572; Bailey v. State, 40 Texas Crim. Rep., 150, and quite a number of other cases cited by Mr. Branch. The rule is as well stated perhaps as can be and as tersely by Mr. Branch in his work on Criminal Law in section 218 of that work. He uses this language: "The statute relating to confessions is not confined strictly to a technical confession, but covers any act in the nature of a confession, statement or circumstance done or made by the defendant while in confinement or custody and not having been properly warned, which may be used by the State as a criminative fact against him." There can be no question that his statement that he was out of the City of Texarkana on the night of the homicide and at a different place some miles away was used by the State as a criminative fact. It was introduced for no other purpose by the State and it could have no other effect. It was a direct attack upon his testimony introduced showing his presence in the City of Texarkana, but absence from the homicide. The writer does not understand how this testimony could be admissible. It was criminative and as used critically so, and evidently the jury so regarded it, as did the court. In Hernan v. State, 42 Texas Crim. Rep., 464, appellant set up the defense that he was in another part of Texas when the alleged burglary occurred. This court held it was error to permit the State to prove that after his arrest he told the officer he was in Arkansas when the burglary occurred. In Bailey v. State, 40 Texas Crim. Rep., 150, this court held it was error to permit the State to prove that after the arrest of the accused he said he knew nothing about the difficulty. In Wright v. State, 36 Texas Crim. Rep., 427, which was a manslaughter case, the defendant's defense was to the effect that deceased had a knife. It was held error on the trial to permit the State to introduce the unwarned statement that the deceased had a pistol. In Williams v. State, 10 Texas Crim. App., 526, in a horse theft case, it was held error to permit exculpatory statements as to where the defendant got the horse. This exculpatory statement was in contradition of the defense on the trial. In Parks v. State, 46 Texas Crim. Rep., 100, being a cattle theft case, it was held error to permit exculpatory statements, the defendant having adopted another defense on the trial. See also Parker v. State, 57 S. W. Rep., 668. These are a sufficient number of cases to show the general line of decisions. These decisions, of course, refer to matters like that included in the bills of exception in this case. So far as the writer has observed or noticed the cases with the rule announced in this dissent has been the rule in Texas until the Whorton case cited by my brethren and written by Judge Harper. I do not care to elaborate this matter. The Whorton case and the opinion of the majority in this case will have the effect to overrule all the decisions heretofore rendered in Texas on this question. They are clearly in error. This judgment ought to have been reversed under all the authorities, unless it be the Whorton case.

For these reasons I respectfully enter my dissent.