### F. W. BADER v. THE STATE.

No. 3767.    Decided December 1, 1915.

Rehearing denied December 22, 1915.

**1.—Murder—Arrest—Warrant.**

Where, upon trial of murder, where the evidence showed that defendant killed the constable who was trying to arrest him, and the facts showed that the constable was justified in attempting said arrest without warrant as the defendant was about to escape, the fact that the officer had no warrant was immaterial. Following Hill v. State, 37 Texas Crim. Rep., 415. Davidson, Judge, dissenting.

**2.—Same—Representation by Counsel—Preparation of Case.**

Where the court appointed counsel to represent defendant who was not lax in the performance of his duty, there was no error in refusing to postpone or continue the case to give other counsel for the defendant who had been employed two days before the trial time to properly prepare for trial. Davidson, Judge, dissenting.

**3.—Same—Motion to Postpone.**

Where defendant filed a motion to postpone to obtain certain witnesses to show that the hat which defendant wore on the day of the homicide had a hole shot through it, etc., but the record showed that the attendance of all these witnesses were secured and the said hat was introduced in evidence, and no other time was asked for postponement, there was no reversible error. Mason v. State, 74 Texas Crim. Rep., 256, 168 S. W. Rep., 115, and other cases.

**4.—Same—Charge of Court—Objection—Practice.**

Where the entire charge of the court, together with defendant's excep-tions thereto was contained in the bill of exceptions, the portions of the charge of the court which were amended to conform to the objections should have been omitted.

**5.—Same—Charge of Court—Arrest Without Warrant—Converse of Proposition.**

Where defendant excepted to that portion of the charge of the court in which the jury were instructed that a peace officer may arrest without warrant when an offender in a felony case is about to escape, because the converse of the proposition should have been submitted, but the record showed that this was fully given to the jury as applicable to the evidence in the case, there was no reversible error. Davidson, Judge, dissenting.

**6.—Same—Arrest—Greater Force Than Necessary.**

Where the issue of resorting to greater force than was necessary to make the arrest was not raised by the evidence, there was no error in the court's failure to charge thereon.

**7.—Same—Charge of Court—Arrest—Self-defense—Serious Bodily Injury.**

Where, upon trial of murder, the evidence showed that the defendant killed a constable who was attempting to arrest him, and the court properly submitted in his charge this question, and the issue of serious bodily injury did not arise in the case, there was no reversible error.

**8.—Same—Requested Charges.**

Where the requested charges applicable to the fact were covered by the court's main charge, there was no error in refusing them.

**9.—Same—Evidence—Flight—Explanation.**

Where, upon trial of murder, the State proved the flight of defendant, there was no error in refusing to admit testimony that the defendant fled on account of great public excitement, as it was shown that the defendant fled before such excitement; besides, such testimony was substantially admitted.

Appeal from the District Court of Lampasas. Tried below before the Hon. John D. Richardson.

Appeal from a conviction of murder; penalty, fifty years imprisonment in the penitentiary.

The opinion states the case.

*T. S. Alexander* and *Matthews & Browning,* for appellant.—On question of refusing postponement for trial: Conway v. State, 53 Texas Crim. Rep., 216, 108 S. W. Rep., 1185; Harris v. State, 169 S. W. Rep., 657; Mason v. State, 74 Texas Crim. Rep., 256, 168 S. W. Rep., 115.

*C. C. McDonald,* Assistant Attorney General, for the State.

HARPER, JUDGE.—Appellant was convicted of murder and his punishment assessed at fifty years confinement in the State penitentiary.

J. J. Connell was constable of Lometa precinct in Lampasas County. Hugh Supple was his deputy. The Lometa Cedar Company had a number of men engaged in chopping cedar near Lometa, and appellant

had been in the employ of the company. H. M. Levison was manager of the cedar company, and paid them on what was termed a "chopper's ticket" issued by the superintendent when the cedar one had cut was checked. On the morning of the 7th of last April appellant presented to Mr. Levison a "chopper's ticket" for $34.75, payable to H. S. McDonald, purporting to have been signed by Newel Graves. It is conclusively shown by this record that the ticket was a forgery. When appellant presented the ticket to Mr. Levison he represented that his name was H. S. McDonald and the ticket had been issued to him for timber cut. Mr. Levison, having his suspicions aroused, investigated and ascertained that the ticket was a forgery, and hunted up appellant and secured back the check, appellant having failed to cash it, although he had made several efforts to do so. The constable, Connell, and his deputy being made aware of these facts, went with appellant to the office of Mr. Levison to investigate the matter and ascertain if the check was really forged. Appellant did not go in the office, but stood just outside, while Connell was in the office making the investigation. The record would disclose that appellant was not over ten or twelve feet from Connell and could and probably did hear the conversation going on, for when the conversation had reached the point where it would become evident that the officers were being informed of facts that would show the ticket was a forgery, and he had passed it, assuming the name of H. S. McDonald, appellant fled. He was pursued by Supple, who was also on the outside, and Supple fired in the air to stop appellant. Appellant stopped, but when he turned it was with a six-shooter in his hand, and he forced Supple to abandon the pursuit and go back. Connell being made aware of the flight, got on his horse and pursued appellant, Supple informing him that appellant was armed. The above facts may be said to be undisputed, the conflict in the testimony appearing in that portion relating to the final encounter.

The testimony of H. C. Wadlington and others shows conclusively that appellant knew Connell was an officer and constable of the precinct; he also knew that he was guilty of passing or attempting to pass a forged instrument, if in fact not guilty of forging the ticket. There can be no question in this case but that appellant knew the officers were attempting to arrest him, and for what crime they sought his arrest, and further, that he wilfully and intentionally resisted arrest. The officers had no warrant, and appellant insists the officers had no right to make an arrest without a warrant, or at least, the question was raised by the evidence that the officers had time to procure a warrant, and, therefore, should not have attempted to arrest without procuring a warrant. Article 262 of the Code of Criminal Procedure provides "that where it is shown by satisfactory proof that a felony has been committed, and that the offender is about to escape, so that there is no time to procure a warrant, such officer may, without warrant, pursue and arrest the person accused." If the facts of any case ever brought it within the provisions of this article of the Code, this case is brought within its provisions. The constable did not arrest appellant upon

being informed of the facts, but goes with him to Mr. Levison to make an investigation, evidencing a desire not to unduly harass or annoy appellant by an arrest, if the facts did not justify an arrest, or if it should appear that appellant was acting in good faith in the premises. When the officer gets ten or twelve feet from appellant, and is investigating the charge against appellant brought to his attention, appellant flees. Under such circumstances we think Constable Connell not only had the legal right to pursue and arrest appellant, but he would have been recreant to his duty as an officer if he had not done so. Hill v. State, 37 Texas Crim. Rep., 416.

When the case was called for trial appellant moved to postpone or continue the case, that his attorneys, who had been employed two days prior thereto, would have time to properly prepare for trial. If they were the only attorneys in the case there might be merit in this contention, but the record before us discloses that when appellant was indicted he was brought into court on the 12th of April, and the cause set for April 19th. On the 12th, the court being informed that appellant had no counsel, the court appointed Mr. T. S. Alexander, an attorney of the Lampasas bar, to represent appellant, and from the record before us we do not think he was lax in the performance of his duties.

Appellant in the motion also stated that he desired the hat obtained by the officers when he was arrested, as it was the hat he was wearing on the day Connell was shot, he contending that the hat would show Connell shot a hole through his hat. He also said, in addition to the other witnesses in attendance on court, he desired A. R. Mace, sheriff of Lampasas County; Hugh Miller, sheriff of San Saba County; Sheriff Perkins of Runnels County, and James Flint, also of Runnels County. The attendance of all these witnesses was secured, and the hat also obtained and was introduced in evidence. The statutes of our State, article 557, gives only two days after copy of indictment has been served in which to prepare for trial, and if he desires more time than this he must state reasons why it is necessary that he be given more time in his motion for postponement. We have carefully considered this motion, in the light of the evidence adduced on the trial, and we would not feel authorized to hold that the court erred in overruling the motion. Mason v. State, 74 Texas Crim. Rep., 256, 168 S. W. Rep., 115; Conway v. State, 53 Texas Crim. Rep., 216, 108 S. W. Rep., 1185.

In bill of exceptions No. 2 the entire charge of the court is copied, together with appellant's exceptions to the charge. As the court amended his charge so as to conform to exceptions Nos. 1 and 2, these should have been omitted from the bill of exceptions.

The third exception relates to that portion of the charge in which the court instructed the jury that a peace officer who is given information by a credible person that a felony has been committed and the offender is about to escape, may arrest without warrant, and it is the duty of the officer to do so, and says the converse of this proposition should also have been given in charge. We think the converse of the

proposition was fully given as applicable to the evidence in this case. That appellant was guilty of a felony is made plain by this record; that the officer had been so informed is also made manifest; it is also proven beyond dispute that appellant, when he ascertained that the officer was being made aware of these facts, fled. It was the duty of the officer to pursue and arrest him without warrant, for there was no time to secure a warrant. If the officer had undertaken to secure a warrant, at the rate appellant was traveling, he could and would have made his escape, as he subsequently did anyway. Now the main conflict in the testimony is as to who fired the first shot, appellant or the deceased. But all the witnesses show that Connell was a one-armed man, and could not and did not draw a pistol until his horse was stopped; that prior to this time appellant had drawn his pistol, and as Connell got off of his horse, he was advancing on Connell with a pistol drawn, and we think the court's charge in presenting the converse of the above proposition, if anything, presented it more favorably than appellant was entitled to, for the court instructed the jury if they believed Connell fired the first shot to acquit appellant. The court, at the instance of appellant, gave the following special charge in addition to his main charge: "You are charged that if you believe from the evidence that the defendant attempted to escape and evade arrest by Hugh Supple, deputy constable of Lampasas County, and that the said Supple made an attack on the defendant from which it appeared to the defendant, viewed from his standpoint that the said Supple was about to kill him or do him serious bodily harm, and that the defendant continued his retreat in attempting to evade arrest and was pursued by said Supple and others, and that in a short time thereafter J. J. Connell pursuing the defendant and intercepting him and from the acts and demonstrations, if any, of the said Connell as they appeared to the defendant at the time, viewed from his standpoint, that the said Connell was continuing the attack made upon him by the said Supple and was about to inflict upon him death or serious bodily injury, then you are instructed that the defendant would have the right to shoot in his own defense and to kill the said J. J. Connell."

There is no question of greater force being used than was necessary in this case. When Supple pursued appellant, he drove Supple back at the point of a pistol. When Connell overtook him he had his pistol ready for instant use, and used it, therefore the issue of resorting to greater force than was necessary to effectuate the arrest does not arise in the case, and this exception to the charge presents no error.

The following paragraph of the charge of the court was excepted to on the grounds named below: "If, however, the defendant did not resist the said J. J. Connell, but was merely attempting to escape or evade arrest, then the said Connell would have had no right to kill the defendant to prevent his escape and if you should find that the deceased first drew his pistol and shot at the defendant to kill him in order to prevent his escape, then you are instructed that the defendant had the right to defend himself from such attack by the said J. J. Connell, and

if in defending himself from such an assault he killed the said Connell, he would be justified in so doing, and you should acquit him."

The first insistence is that the charge intimates to the jury that if appellant was resisting arrest, Connell would have the right to kill him. The charge is subject to no such criticism. The next criticism is that the charge limits the right of self-defense, in that it only justifies him if Connell shot at him to kill him, and "does not tell the jury what right the defendant had if it appeared to him that deceased was about to inflict on him serious bodily injury." In some character of cases this exception might be well taken. But the evidence, and all the evidence, shows that whoever fired the first shot, appellant and deceased advanced towards each other continuing to shoot with deadly weapons until Connell had emptied his pistol; that then it was when Connell had thrown his pistol away and called to appellant not to shoot any more, that appellant fired the fatal shot. Connell was struck by only one bullet, this ball passing through the lower part of his heart. The doctor says such a shot produces instant death. In such a case the issue of inflicting serious bodily injury and not to kill does not arise, and the criticism is without merit under the evidence in this case. If appellant had objected to this paragraph of the charge on the ground that it shifted the burden of proof, there might and would be merit in it, if the court had not given the special charge requested by appellant curing such error.

The above are all the exceptions reserved to the charge of the court, and the special charges requested and refused were fully covered by the court's charge and special charge given, in so far as they presented the law of this case.

The only other exception in the record is that the court erred in not permitting appellant to prove by Sheriff Mace that when he reached Lometa (after the homicide) there was great public excitement and a great many armed men hunting for appellant, counsel stating that they expected the answer to such questions to explain the flight of defendant. As it is manifest from the record that appellant had already fled before the sheriff arrived at Lometa, and had fled immediately upon the killing of Connell before any citizens had time to gather and begin a search, this action of the court presents no error. The court, in approving the bill, says: "The defendant had offered no testimony to show why he fled from Lometa after shooting deceased, he not testifying in his own behalf. It was not shown that the defendant knew either of the feeling at Lometa aroused by his acts, or that armed men were hunting him; however, the sheriff, Albert Mace, did testify that he and a large number of armed men were hunting for the defendant in the vicinity of Lometa."

We have carefully reviewed each bill of exceptions and each ground of the motion for a new trial, and none of them present any matter which would call for a reversal of this case.

The judgment is affirmed.                    *Affirmed.*

[Rehearing denied December 22, 1915.—Reporter.]

DAVIDSON, Judge (dissenting).—When the opinion was handed down I could not agree with the affirmance. I do not purpose here to enter into a lengthy discussion of the case. In the first place, I believe the court should have granted the continuance or delay of the trial in order that the attorneys might inform themselves of the case as a necessary step to enable them to defend their client. I need not make any further statement than was made by Judge Harper in the opinion affirming. Where the Constitution guarantees the right to an accused person to be heard by himself or his counsel, it evidently means ample time for preparation to try the case on the law and the facts. Messrs. Matthews & Browning were employed in the case to assist Mr. Alexander, who had been appointed by the court. Mr. Alexander had been busy, and had not practiced criminal law to any extent. Messrs. Matthews & Browning had been employed just a day or two before the case was to be tried and had not time to look into the case and examine into it and see the witnesses and find out exactly what the case was. It could have injured the State in no way to have postponed the case a few days that these gentlemen might look into the case and see that their client had a fair trial such as the law and facts would indicate or guarantee. The fact that they may have had two days in which to prepare and file pleadings as authorized by the statute, does not meet this question, and in fact, in my judgment, has but little or no bearing upon it. The accused is entitled to the two days service and copy of indictment in which to file pleadings and matters of that sort, but that does not pertain to the general preparation of the case for trial before the jury, except as incidental to the main trial. Those are but steps of preparedness in filing pleadings. It does not preclude, nor was it intended to operate upon the question that defendant ought to be granted sufficient time to understand his case and find out what the facts were so he might prepare the case and properly present it to the court and jury.

The next question is one of considerable importance to the defendant, as the question of manslaughter was very fully and elaborately in the case. The theory of the State was that appellant had forged the document mentioned in the prevailing opinion and had presented it to the manager of the Lometa Cedar Company in the town of Lometa. This was known to the officers some time before the difficulty came up. They talked to defendant about it, and went around to the office of the head man of this company and defendant accompanied them. It seems to have been an hour or more after they ascertained it, and most of this time they were with defendant or about him. The justice of the peace lived within telephone call and close by the little town of Lometa where these matters occurred. He could have been called up by phone and gotten to town in fifteen minutes or less time. It seems they had an hour or more in which to prepare affidavits or affidavit as a basis for warrant of arrest. This was not done or attempted to be done. The justice of the peace was not even notified. Mr. Connell, the deceased, went into the house where the manager of the cedar company

was and talked with him about the matter. Supple, another officer, was on the outside, as was defendant, standing somewhere in the neighborhood of the house, and while standing there appellant walked away. Supple drew his pistol, and he says fired up in the air to scare appellant. There is nothing to indicate appellant knew he was shooting in the air, for his back was to him as he was walking away. He reached for his pistol and told Supple to stop, not to do that, or he would kill him, and continued walking away perhaps with the intention of escaping, and we might be warranted in concluding such was his purpose. Upon hearing the shot Connell, the constable, came out, Supple being his deputy. He instructed Supple to follow the defendant while he, Connell, would head him off. Connell was a one-armed man, and jumped on his horse and undertook to get ahead of appellant, and succeeded. The shooting began between them with the result that Connell was killed.

The State's theory is that appellant fired the first shot. Defendant's theory is that Connell fired the first shot. Inasmuch as the jury and this court in affirming the judgment took the view of the State, it is unnecessary to discuss that phase of it. The defendant's theory along this line was about this, and he introduced witnesses to prove it: That as Connell approached him horseback he (Connell) had his pistol in his hand, and one or more of the witnesses swear that Connell fired first, and that appellant returned the fire. One or two witnesses testified something was said between them but they did not hear it. If there was anything said between them it is not detailed in the testimony, because it was not heard by any of the witnesses. The details of the fight and the shots and all that occurred between them at the time I deem unnecessary for what I care to state. Suffice it to say, there was a sharp issue as to who fired the first shot. There is testimony enough, had the jury believed it, and from witnesses who seem to be unimpeached in any way, that Connell did fire the first shot.

This brings up sharply the question of illegal arrest. If Connell had the time to have had the presence of the justice of the peace, or gone to his house, a mile or so from town, and made affidavit and secured a warrant for his arrest, then he had no right to make the arrest without a warrant. He made no attempt to file affidavit or secure one. All the efforts he made are based upon the idea that as the defendant had forged the instrument or was passing the instrument, he had the right to arrest him, even though he had time to secure a warrant. This is not the law. He made no attempt to secure a warrant. Under those circumstances the question of illegal arrest was raised from that viewpoint, and that would predicate the basis for manslaughter. But another phase is, if Connell followed the defendant and became the aggressor and fired the first shot, then appellant had the right to resist, even to taking the life of Connell, clearly and unequivocally, under the law, both statutory and the decisions. Mr. Connell had no right to shoot at him until appellant had resisted in such manner as to justify Connell in shooting. Another phase of it is this,

that although he may have had the authority and right, legally speaking, to have arrested appellant without a warrant, yet the law is plain and unequivocal in this State that where the right of arrest exists in the officer and he undertakes to do it in an illegal, harsh or arbitrary manner not justified or warranted by law, he becomes the aggressor and not the person he is undertaking to arrest. An officer has no right to arrest in an unwarranted, illegal or harsh manner. Another proposition in this connection is, so far as I recall the record, Mr. Connell never even made a demand on appellant to surrender, and from either the defendant's or State's standpoint, he had no right to shoot until he had made that demand and the appellant had forcibly resisted. Of course, the other man may have been the aggressor and fired before Connell had time to make that demand of the appellant, but the State's side of it was given fully to the jury. I am only speaking now in this connection of legal rights under those circumstances that should have been stated to the jury in the charge of the court as a basis for their finding as well as under the facts. I do not deem it necessary to follow this matter or cite authorities. These questions are settled by the decisions in the history not only of Texas jurisprudence but, so far as I am aware, wherever our Anglo-Saxon jurisprudence and our constitutional provisions and statutory requirements are in existence.

There are some other matters but I do not care to follow this matter. Briefly stated, I file these as some of my reasons for not agreeing with the affirmance of the judgment.